(No. 21310.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GUISSEPI MARIA ABBATE, Plaintiff in Error.

*Opinion filed June 24, 1932.*

GEORGE A. GORDON, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, OTHO S. FASIG, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. COMMISSIONER PARTLOW reported this opinion:

Plaintiff in error, Guissepi Maria Abbate, (hereafter referred to as the defendant,) was found guilty in the criminal court of Cook county, by the court without a jury, of statutory rape upon Lucy Vitiello, a girl thirteen years old. He was sentenced to the penitentiary for life and has prosecuted a writ of error from this court to review the judgment.

Several grounds of reversal are urged, but it will be necessary to consider only one of them, namely, whether the evidence establishes the guilt of the defendant beyond a reasonable doubt.

The indictment was returned on July 17, 1931, and charged a rape on August 14, 1929. The defendant was a barber in Chicago. He testified that in 1906 the Lord appeared unto him and ordained him as a priest and ordered him to build a church and to preach the gospel. From 1906 to 1915 he followed his trade but preached at intervals and collected quite a following. In 1919 he secured a church at 2021 DeKalb street, in Chicago. In the basement was a school. The first floor contained a kitchen, a dining room and some offices. On the second floor was a church, and the third floor contained the sleeping quarters of the defendant, a secretary and four so-called monks. Adjoining the church was a convent, which was connected with the church by a rear porch. The convent was occupied by two sisters of the church, some old women, and at the time of the incident in question by the prosecutrix and her mother. The prosecutrix was born in New York City on April 16, 1916. Her parents separated several years before 1929.

Her father remained in New York City and the prosecutrix and her mother moved to Chicago, where they lived with relatives for a year or two. In 1925 the mother joined the church of the defendant. In October, 1928, she became sick and destitute. She applied to the defendant for shelter and food. The request was granted and she and the prosecutrix moved into the convent. The mother did such work as she was able to do for her board and the prosecutrix attended the public schools and did some work around the church and convent. The prosecutrix testified that on August 14, 1929, about nine o'clock in the morning, she was at work in the church. The defendant was in his room, on the third floor. He called her to come to his room. When she went to his room he grabbed her arm, locked the door, threw her on the bed and had intercourse with her. She testified that she was in the room with him for about two hours. When she left the room he told her to say nothing about what had taken place or else to say that two boys did it, and that if she told, dire results would follow. She testified that she immediately went to her mother and told her what had taken place. Her mother told her it was all right and that the priest was entitled to the first fruits. The mother, as a witness for the defendant, denied this conversation. She testified that she never heard this story until about two years later. The prosecutrix testified rather indefinitely as to immoral talks and acts by the defendant with her about a week later, but there is no evidence of any other liberties or attempted liberties by the defendant with her after that date. The prosecutrix and her mother continued to live in the convent until April, 1931, when they went to New York City for a month or two. The prosecutrix testified that she met her father in New York City and told him of this incident with the defendant. The father testified for the State, but he did not corroborate his daughter in this respect. While in New York a quarrel arose between the

prosecutrix and her mother on account of the prosecutrix being on the streets late at night with young men and boys. The mother ordered her to stay at home. She refused to obey and threatened to go and live with her father if the mother attempted to enforce her order. In June, 1931, the prosecutrix, after she returned to Chicago, was taken into the juvenile court. Why this was done does not clearly appear from the evidence. A physician attached to the court examined the prosecutrix and testified on this trial that she had a ruptured hymen of long standing.

The defendant denied the story told by the prosecutrix relative to any criminal act on his part towards her. He testified that on August 14, 1929, he was not in Chicago but on that date was at a summer cottage in Michigan, and that he was there from July 27, 1929, to August 18, 1929. Several witnesses who were members of his congregation testified that they were in Michigan in this same cottage with the defendant between these dates. Later, during the trial, one of these witnesses testified that he was mistaken as to the date when he returned from Michigan to Chicago; that he returned on August 3, 1929, instead of on August 18, 1929, as he had originally testified, and that he did not see the defendant in Michigan on August 14, 1929. Another witness corrected her testimony by saying that she was mistaken as to the year she was in Michigan, and that she was there in 1928 and not in 1929, as she had originally testified. Several other witnesses, however, without impeachment or contradiction, testified that the defendant was in Michigan on August 14, 1929. As a result of the change in their testimony by these two witnesses a warrant was issued for one, if not both, of them on a charge of perjury, and a great deal is said in the briefs relative to an alibi being established by perjury. As a result of this change in their evidence by these two witnesses the attorneys who represented the defendant withdrew from the case while it was on trial and new attorneys took up the defense.

This court has held repeatedly that where a conviction of rape depends upon the testimony of the prosecuting witness and the defendant denies the charge, the evidence of the prosecuting witness should be corroborated by some other evidence, fact or circumstance in the case. (*People* v. *Fitzgibbons,* 343 Ill. 69; *People* v. *Glasser,* 335 id. 263; *People* v. *Blanch,* 309 id. 426; *People* v. *Bolik,* 241 id. 394.) It has also been held that where a verdict is returned by a jury in a criminal case, or where a similar finding is made by a court where a jury has been waived, it is the duty of a reviewing court to carefully consider the evidence, and if it is not sufficient to remove all reasonable doubt of the defendant's guilt and is not sufficient to create an abiding conviction that he is guilty, the reviewing court should reverse the judgment. (*People* v. *Nemes,* 347 Ill. 268.) In this case five witnesses testified on behalf of the State. Three of them, namely, the father of the prosecutrix, the officer who arrested the defendant, and a witness who testified as to a date when one of the witnesses returned from Michigan, testified to no fact which proved or even tended to prove the guilt of the defendant. Another witness, the physician connected with the juvenile court, only testified to the condition of the prosecutrix two years after the alleged assault. In some cases proof of this fact might be very material and important, but in this case, after two years, it was of very little value. With the testimony of these four witnesses out of the case the conviction depends almost entirely upon the testimony of the prosecuting witness and the defendant. Her testimony is not of that clear and convincing character which the law requires in cases of this kind. She testified that immediately after the assault she told her mother all about it. The mother contradicts her in this respect. Nothing further was said or done about the matter for almost twenty-two months, during which time the prosecutrix and her mother lived in the convent and met the defendant almost daily.

It is insisted by the State that during these twenty-two months the prosecutrix was practically a prisoner in the convent; that she was taken out of the public schools and sent to another school, and that she was accompanied to and from school by her mother or by some person in the convent. The evidence shows that she went to another school after the alleged assault. It shows that a few months prior to the alleged assault she was attacked on the street by two boys about ten years old while going home from the public school. Whether any special significance should be attached to this incident is doubtful. We do not think the evidence shows that the prosecutrix was a prisoner in the convent or that she was restrained from communicating with the outside if she had seen fit to tell of the alleged assault upon her by the defendant. The conviction depends upon her uncorroborated testimony. The defendant denied the story, and several witnesses testified that he was not in Chicago on the day of the alleged assault. Under the rule announced in the cases cited, there must be some evidence corroborating the testimony of the prosecutrix. The defendant was on trial on a specific charge. He was not on trial for pretending to be a priest, or for operating a questionable institution under the guise of religion. It is not necessary to consider in detail the merits of these questions. The evidence of the State was not sufficient to establish the guilt of the defendant beyond a reasonable doubt, and the judgment must be reversed regardless of all other questions in the case.

The judgment is reversed and the cause is remanded.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded.*