(No. 30459.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HAROLD PAX, Plaintiff in Error.

*Opinion filed March 18, 1948.*

WILL P. WELKER, of Vandalia, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, of Springfield, (JOSEPH B. SCHLARMAN, State's Attorney, of Carlyle, of counsel,) for the People.

Mr. JUSTICE SIMPSON delivered the opinion of the court:

Plaintiff in error, Harold Pax, has sued out a writ of error to reverse a judgment against him in the circuit court of Clinton County, finding him guilty of taking indecent liberties with Elmer E. Richey, a male child fourteen years of age. He was found guilty by a jury and sentenced to the penitentiary for a term of one to ten years. The verdict found him to be 23 years of age.

On Sunday evening, April 28, 1946, Elmer E. Richey had been in Carlyle and was thumbing a ride to his home at Huey, about four miles to the east. At 9:30 P.M. a motorist stopped and picked him up. There was no other passenger in the car. The car was a light green 1941 Ford. When they reached Huey, the motorist turned north stating he was going to see some people he knew which would take only a minute and that Richey should ride along with him. He drove about one and one-half miles north on a country road and then stated he did not think the people lived any further north and that he was going to turn back. He drove into the driveway at a farm house, backed out and headed south. After going about a quarter of a mile he stopped and got out to relieve himself while the Richey boy remained in the car. The motorist then went to the right side of the car where Richey was seated, opened the door and took indecent liberties with him after having first threatened him. When Richey was freed, he

immediately ran to the farm house where they had turned around. The sheriff was called and a deputy came to the farm house in about 15 minutes and took Richey to his home in Huey.

Richey described the man to the deputy as one of heavy build, having a high receding forehead, rather thin hair, a heavy-featured face, baggy eyes and a high-pitched voice and stated he was wearing a blue pin-striped suit. Not more than twenty minutes elapsed from the time Richey was picked up until the act complained of took place. Richey did not know whether it was moonlight but stated that it was light and that he could make out the features of the motorist; that along the street within the city of Carlyle there was a white way with electric lights on both sides of the road and that he looked at the motorist several times while in the city; that at the time the act complained of took place the motorist's face was approximately one and one-half feet away.

Richey had never seen this motorist before. The last part of May or the first week in June, 1946, Richey was working at a Kroger store in Carlyle when plaintiff in error entered the store. Richey identified him as the motorist who had committed the crime and procured a friend of his sister to take a Kodak picture of him on the sidewalk after he left the store.

Richey next saw plaintiff in error the first part of August, 1946, when he went with a patrolman to Beckemeyer where plaintiff in error was digging a ditch with three or four others. He went for the purpose of hearing plaintiff in error talk so he could further identify him by his voice. The patrolman talked with the plaintiff in error while Richey remained in the car. Richey heard plaintiff in error talk but could not remember what he said other than the one word "hell." He identified the voice as coming from the man who committed the crime.

About August 15, following, Richey was in the State's

Attorney's office in Clinton County with his father, the State's Attorney and the sheriff, when plaintiff in error was brought in. Richey there accused him and detailed the facts of the crime and those leading up to it in the presence of plaintiff in error, who said nothing because he did not want to talk until he had advice of counsel. Immediately after leaving the conference with the sheriff plaintiff in error told the latter that he was not guilty of the acts charged. After evidence of what took place in the State's Attorney's office had been detailed before the jury and evidence of plaintiff in error's silence related, the court struck it from the record and instructed the jury to disregard it.

Aside from the testimony of Richey there is no evidence in the record which tends in any manner to connect plaintiff in error with the crime. It is claimed by the State that contradictory statements were made by plaintiff in error relative to his clothing; that he told the sheriff he had purchased a blue red-pin-striped suit after his discharge from service. Richey had stated that the perpetrator of the crime had worn such suit. Plaintiff in error did not remember making a statement to the sheriff about his suit but did testify positively, and in this he was corroborated by his mother, that he did not have a pin-striped suit of any character; that he had only a black suit and a brown suit neither of which was pin-striped.

Plaintiff in error proved his good reputation by a number of witnesses and no contrary evidence was offered. A few of the character witnesses based their opinions upon improper premises but as a whole the record indicates clearly that plaintiff in error enjoyed a good reputation among those who were in a position to know of it. He was in military service about three years, was in the battle of the bulge, was captured and made a German prisoner. He was honorably discharged January 4, 1946, in poor physical condition.

Richey was positive as to the time he was picked up and the time the crime was committed. He was positive in the identification of the automobile in question and as to the identification of the plaintiff in error.

The record shows without contradiction, except as it is contradicted by Richey, that plaintiff in error went to a tavern or night club in Breese at about eight o'clock P.M., April 28, 1946, and remained there until midnight. He was in company at the night club continuously, but for a few minutes at a time, with the former owner who had sold out a few days before and had gone there that night to instruct his purchasers in the operation of the business. The owner remembered this night because of the fact that he had gone back for that purpose.

The great weight of evidence is to the effect that on the night in question plaintiff in error never used the light green 1941 Ford but that he used a black car of different body style; that the light green Ford owned by plaintiff in error's father was used by the father and mother on that night and was in their possession from early evening until long after the time when the crime was committed. Both the father and mother testified to the use of the light green Ford that evening and in this they were corroborated by witnesses wholly disinterested, except that they were good friends of plaintiff in error and his parents.

Plaintiff in error denied positively every act that would connect him in any manner with the crime. The weight of the evidence shows he did not have a light green Ford in his possession at any time during the evening and night in question and that he was not present when the act in question was committed.

A crime so revolting as this should not go unpunished but it does not call for punishment of one not proved to be the perpetrator of it. The burden rests upon the People not only to prove beyond a reasonable doubt the commission of the crime charged but also to establish by the

same degree of proof the perpetration of the crime by the person accused. *People* v. *Buchholz,* 363 Ill. 270; *People* v. *Gold,* 361 Ill. 23; *People* v. *Peck,* 358 Ill. 642.

Evidence of good reputation standing uncontroverted is entitled to some consideration and weight. Neither can we disregard the evidence of alibi where the only evidence tending to contradict it rests upon the identification of plaintiff in error as the perpetrator of the crime. *People* v. *Buchholz,* 363 Ill. 270; *People* v. *Gold,* 361 Ill. 23; *People* v. *DeSuno,* 354 Ill. 387.

The crime charged is one similar, except possibly in degree, to the crime of rape. We said in *People* v. *Martin,* 380 Ill. 328, 340: "We have repeatedly held in rape cases that where a conviction depends upon the testimony of the prosecuting witness, and the defendant denies the charge, there must be substantial corroboration of the prosecuting witness by some other evidence, fact or circumstance in the case. *People* v. *Kazmierczyk,* 357 Ill. 592; *People* v. *Abbate,* 349 Ill. 147; *People* v. *Glasser,* 335 Ill. 263."

Plaintiff in error complains of the refusal to give one of his instructions and of the admission of improper evidence. It will not be necessary to pass upon those matters.

From a careful consideration of all the evidence we cannot say that the guilt of plaintiff in error has been proved beyond a reasonable doubt nor does it create in our minds an abiding conviction of the guilt of the plaintiff in error, which is necessary in order for us to sustain the conviction. It is evident the State produced all available evidence which would connect plaintiff in error with the crime and no good purpose would be served by remanding the cause for another trial.

The judgment of the trial court is reversed.

*Judgment reversed.*