(Nos. 19106, 19334.—
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH G. GLASSER, Plaintiff in Error.

*Opinion filed June 19, 1929.*

BENEDICT J. SHORT, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. COMMISSIONER PARTLOW reported this opinion:

Plaintiff in error, Joseph G. Glasser, was convicted in the criminal court of Cook county upon an indictment charging him with rape upon Dolores Wheeler, a girl fourteen years old. He was sentenced to the penitentiary for ten years, and he has prosecuted a writ of error from this court to review the judgment.

Plaintiff in error insists that the verdict is not sustained by the evidence. The indictment consisted of six counts, all of which charged that the offense took place on February 7, 1927, and that plaintiff in error was of the age of seventeen years and upwards. All counts except the second charged that the girl was under sixteen years of age. The first, second and fourth counts alleged that she was not the wife of plaintiff in error. The first three counts charged rape and the last three charged an assault with intent to rape. The first count charged rape with force, without consent, the third charged rape with force and did not mention consent, while the second charged rape with consent.

The evidence shows that plaintiff in error was unmarried and kept a bachelor apartment on the second floor of 4637 Drexel boulevard, in Chicago. He was in the real estate business and was part owner of the Sunset Cafe. Dolores Wheeler, who was fourteen years old on December 27, 1926, lived with her mother and step-father at 4008 Ellis avenue, in Chicago. She had a cousin, Loretta Prinz, who was twenty-four years old, was married, had two children, but was separated from her husband. Dolores testified that in December, 1926, Mrs. Prinz, who was visiting at her home, invited her one evening about seven o'clock to go for a walk. They walked down Drexel boulevard, and when they reached Glasser's apartment Mrs. Prinz said she knew a friend who lived there. Mrs. Prinz rang the bell and they went up-stairs into the living room. This was the first time Dolores had ever met Glasser. Mrs. Prinz

started to play the victrola. Glasser put his arm around Dolores, took her into the bed-room and closed the door. He took off her clothes and they had intercourse. After the act she noticed blood on the bed. She put on her clothes, went into the bath-room and washed off the blood. She then went into the living room and Glasser gave her five dollars. She testified she had no conversation with him during this time; that Mrs. Prinz was in the living room all of the time; that they were in the apartment about fifteen minutes and they then went home, and that she did not say anything to anybody about what happened until she was placed in the House of the Good Shepherd. She also testified that on February 7, 1927, about ten o'clock P. M., Mrs. Prinz came to her home. She and her mother were in bed. Mrs. Prinz told the mother she was going out to look for her husband and asked if Dolores could accompany her. Mrs. Wheeler consented and asked them to hurry back. They left the house and Mrs. Prinz said she was not going to see her husband but that Glasser was waiting in his car at Forty-first street and Drexel boulevard. They got into his automobile and went to his apartment. He went into the bed-room, took off his coat and hat, came out in about five minutes, put his arm around Dolores, took her into the bed-room, closed the door and had intercourse with her. After the intercourse he said he would give her a diamond ring if she would bring other girls there; that he would pay the cab bill any time she cared to come to his cafe, and he gave her five dollars. She testified that she and Mrs. Prinz were in the apartment about fifteen minutes, when they went to a restaurant, had something to eat, and went home. Next morning the two went to the home of Mrs. Sulzer, a friend of Mrs. Prinz who lived at 6029 Dorchester street, where they remained about four days, until the next Saturday, when Sulzer told Dolores the police were looking for her and she had better go home. When she

reached home police officers were waiting for her. She went to the juvenile court and was examined by Dr. Harrington. On February 14, 1927, her step-father took her to Dr. Thomas Ney, who asked her if she had been with anybody, and she said she had not and that she had nothing to fear in being examined. Dr. Ney examined her and gave her a certificate. She testified she had not been permitted to see Mrs. Prinz for a year; that she first told her story to a lady at the Juvenile Detention Home; that her mother had pleaded with her to confess whether she had anything to do with a man, and that she first told her story two or three weeks after February 7, 1927.

Dr. Harrington testified that on February 23, 1927, she made an examination of Dolores at the juvenile court. She found the hymen was torn, there was an urethral purulent discharge, which she examined for gonococcus but found none. She testified that the condition which she found could have been caused by a male sexual organ, but that the condition would not necessarily have been so caused but that it could have been caused by a great many things; that the tears were not fresh and were healed on the day of examination; that no infection was present; that discharge in a girl of fifteen or sixteen is not uncommon; that a torn hymen is not uncommon in girls of that age, and the condition could have been caused by any blunt instrument. This was all of the material evidence introduced by the People.

Mrs. Prinz testified that in December, 1926, while walking with Dolores on Drexel boulevard, she noticed Glasser's car at the curb. There was a light in his apartment and she asked Dolores whether she would go up with her to visit a friend. Dolores said that she did not mind. They rang the bell, Glasser answered, and they went up-stairs. Glasser was standing in his bed-room, with the door open, talking on the telephone. When he finished he came into the sitting room. He said he was getting ready to go to

the barber shop before going to his cafe. They played the victrola a few minutes. Dolores went alone to the bath-room for about two seconds. Glasser did not go with her to the bath-room. Glasser said he was going north, and he offered to drop them at Fortieth street and Drexel boulevard, which he did, and they walked home. It was about 8:30 P. M. when they reached home. They were in the apartment not over fifteen minutes, and during all this time Mrs. Prinz was with Dolores except the few minutes she went alone to the bath-room. Mrs. Prinz testified that she heard Dolores' story from the witness stand and that it was false. She did not go with Dolores to the Glasser apartment at any time after December, 1926, and that Dolores' story about the second visit was false. She testified that on February 7, 1927, she was trying to locate her husband. She went to a restaurant, where she got some trace of him. She then went to Dolores' home and found her and her mother in bed, and she asked Mrs. Wheeler if Dolores could accompany her to find her husband. Mrs. Wheeler consented, and as they left the house Dolores said: "Gee, I'm glad you got me out, because I have a date in front of the Oakland Square Theatre with a boy who has a Nash car." They walked to the theatre but no one was there. They then went to 4157 Ellis avenue to inquire for Prinz but did not find him. Dolores said she was hungry. They went to a restaurant, got something to eat and then went home, where the two spent the night. The next morning Mrs. Prinz and Dolores went to the home of Mrs. Sulzer, where they stayed until the next Saturday, when Dolores went home.

Dr. Ney testified that on February 14, 1927, Dolores was brought to his office by her mother and step-father, who asked him to examine her for her virtue. He asked her three times whether she had ever had intercourse with anyone and she said she had not. He had difficulty in inserting his index finger. He found that she had whites,

which was not uncommon in girls of that age. He found no infection and his examination disclosed that she was virtuous.

Glasser testified he had seen Dolores but one time, in December, 1926. He was in his apartment, changing his clothes, when the telephone bell rang. While answering the telephone the door bell rang. He spoke through the tube and inquired who was there and Mrs. Prinz replied, so he pressed the button and they came up. He continued his telephone conversation and Mrs. Prinz started to play the victrola. He requested her to stop, because he could not hear over the telephone. He then went into the living-room, and Mrs. Prinz said, "I want you to meet my kid cousin." He told them he was in a hurry to go to the barber shop and had to go down-town, but if they would wait a few minutes he would drive them down. The telephone bell rang again and he answered it. He then put on his coat and hat. Neither Mrs. Prinz nor Dolores had taken off her hat or coat. They got into his car and he left them at the Drexel Square Theatre, at Fortieth street and Oakland avenue. They were in the apartment ten or fifteen minutes. He denied he took Dolores into the bed-room, that he had intercourse with her or that he gave her money. He testified he never saw her again until after he was arrested; that he heard her testify about the visit on February 7, 1927, and that her testimony was untrue; that he did not see her or talk to her on February 7, 1927, and that the only time he ever saw her was on the one visit in December, 1926.

In support of his motion for a new trial plaintiff in error filed the affidavit of Dolores Wheeler, in which she alleged that on February 5, 1928, she told her mother and step-father that plaintiff in error was not guilty of the charge she had made against him; that he did not have intercourse with her or mistreat her; that she had been to his apartment and that his name was the first one she

thought of when she was accused; that the reason she testified against him on the trial was that if she had not so testified the woman's organization would have kept her confined in the House of the Good Shepherd until she was twenty-one years of age. The mother and step-father filed affidavits as to this conversation on February 5, 1928. The court overruled the motion for a new trial, and this writ of error was prosecuted.

The burden was upon defendant in error to establish the guilt of plaintiff in error beyond a reasonable doubt. Where the testimony is conflicting it is for the jury to determine the credibility of the witnesses and the weight to be given to their evidence. This court will not disturb a verdict upon the facts, alone, unless it is palpably contrary to the weight of the evidence. (*People* v. *Marx,* 291 Ill. 40.) This court will reverse a judgment where the evidence is of an unsatisfactory character and so greatly preponderates in favor of the accused as to indicate that it is the result of passion or prejudice on the part of the jury. (*Cunningham* v. *People,* 210 Ill. 410; *Keller* v. *People,* 204 id. 604.) It has been held that where the defendant denies the charge the evidence of the prosecuting witness should be corroborated by other evidence, facts or circumstances in the case. (*People* v. *Blanch,* 309 Ill. 426; *People* v. *Bolik,* 241 id. 394; *Stevens* v. *People,* 158 id. 111.) If the evidence of the prosecuting witness in this case is true, this was a rape, with consent, upon a girl under sixteen years of age by a male over seventeen years, as provided in section 237 of the Criminal Code. (Cahill's Stat. 1927, p. 931.) Her story is not corroborated in any detail. She made no outcry, she told no one of the rape, she made no complaint, when she was asked about it she denied that a rape had taken place, she bore no physical mark of having been raped, and after the trial she made an affidavit denying the truth of her testimony on the trial. Plaintiff in error denied the charge, and he was corroborated by Mrs. Prinz, who, ac-

cording to the evidence of the prosecuting witness, was in the next room all of the time on both occasions. It is insisted by defendant in error that the evidence of Dr. Harrington tends to corroborate the evidence of the prosecuting witness that she had intercourse. The evidence does not sustain this contention. The evidence of Dr. Ney is that she was virtuous. The evidence did not establish the guilt of plaintiff in error beyond a reasonable doubt.

The judgment will be reversed and the cause remanded.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded.*