(No. 26192.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HUGH GREER CARRUTHERS, Plaintiff in Error.

*Opinion filed March 16, 1942—Rehearing denied May 12, 1942.*

WALTER BACHRACH, (WALTER H. MOSES, and J. H. OPPENHEIM, of counsel,) for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and SAMUEL L. FREEDMAN, of counsel,) for the People.

Mr. Justice Stone delivered the opinion of the court:

Plaintiff in error, under the name of Hugh Greer Carruthers, seeks review of a judgment of the criminal court of Cook county convicting him of the crime of rape. His punishment was fixed at ten years in the penitentiary.

It appears from the evidence that plaintiff in error was the head of a group known as the Neological Society, and in connection with this organization he maintained a business office in the downtown district of Chicago, where he employed one Himes, a chiropractor, and one Ronnie, a physician, who treated members of the society. Plaintiff in error had a private room in the suite of offices of the society, as did the doctors and certain other officers. Plaintiff in error's office opened into a corridor that connected with the reception room. It was in this private office that the offense is alleged to have taken place.

The charge is laid on July 30, 1940, and the offense is alleged to have been committed at a time when plaintiff in error, his colleagues and business associates were present in their respective parts of the office, and while several clients and other persons were waiting in the reception room. Among those in the reception room were an aunt and cousin of the prosecuting witness.

The prosecuting witness, a well-developed girl of twelve years, and her mother, a Mrs. Meehan, had been taking treatments from Dr. Himes for some time, but prior to July 30 did not know Carruthers. Because of alleged dissatisfaction with Himes' treatments, the prosecuting witness' mother brought her, on that day, to see Carruthers, who was called "Doctor" though not licensed to practice. No appointment had been made for this meeting.

The prosecutrix's mother testified that when prosecutrix went into Carruthers' office, witness attempted to accompany her but was restrained by him with the statement that he was going to talk to her and could get better results alone. This is denied by Carruthers and other witnesses

present, who stated that the mother had already gone into Dr. Himes' office for a treatment when the prosecutrix entered Carruthers' office.

There is substantial dispute in the testimony as to the length of time the prosecutrix remained in the office of Carruthers. She testified that it was twenty minutes, while others fixed the time at ten to twelve minutes. Prosecutrix testified that after she entered the office the door was closed. She did not know whether it was locked but there was a spring lock on it. Her testimony further was that she was told to lie on a couch and Carruthers asked her several questions, examined her heart and told her there was nothing wrong with it, and then started a conversation about sex relations of men and women. The details of this testimony it is unnecessary to give here. Suffice it to say that if prosecutrix's story is to be believed, Carruthers took indecent liberties with her and performed the act of rape here complained of, after which he cautioned her to tell nobody but keep it a secret between them, as he had done what was best for her, but that she refused to promise to remain silent. She testified also that during the time she was there the only interruption was a telephone call to Carruthers, which he answered. On the other hand, one Mary Morel, cashier of the society, testified that during the time prosecutrix was in Carruthers' office, the door was slightly ajar and that she, the witness, twice entered the office, once with some papers for Carruthers, and the second time to pick up some papers, and that at both times prosecutrix was sitting at the desk of Carruthers.

Carruthers denied the acts testified to by the prosecutrix; stated that she sat in a chair beside his desk and he talked to her regarding her illness and treatments with Dr. Himes about ten minutes. He testified that he found a vertebra out of line and called her aunt, a Mrs. Burns, and her brother into the office while he made an adjustment. This testimony is undisputed. The aunt, however, testified

that Carruthers told her that he had made an adjustment in the vaginal region. She also testified that the plaintiff in error appeared nervous and excited.

Mrs. Meehan, prosecutrix's mother, testified she met Carruthers as she came out of Himes' office, and he told her substantially the same things he had told Mrs. Burns. Plaintiff in error denied any such conversation with either of these women but testified he spoke with Mrs. Burns about taking prosecutrix to a reputable physician if they were not satisfied with the treatment given by Dr. Himes. He stated he did not talk to Mrs. Meehan at any time. There is, however, no conflict in the evidence regarding the demeanor of the prosecutrix when she came out of Carruthers' office. She made no complaint to her mother and when she was asked by Himes, in her mother's presence, how she liked Dr. Carruthers, she replied "all right."

There is in the record, considerable testimony given on both sides for the apparent purpose of discrediting witnesses, some of which tends to show that the entire situation was a "frame up" on plaintiff in error, fostered by Mrs. Burns, to whom plaintiff in error repeatedly refused to loan money although it was his practice to loan money to other members of the society, and a Dr. Loffler, an unfriendly former colleague of Carruthers. On the other hand Carruthers was asked and admitted that he had been convicted of robbery in the State of New York in 1921 under another name. He admitted that he was not using his correct name and refused to tell what his correct name is.

In a case of this kind, where the injured person testifies to the commission of the crime, evidence of complaint by her soon after the injury, or at first opportunity, is competent, not to prove the commission of the act but to corroborate her testimony. It is an exception to the general rule which excludes hearsay evidence. (*People* v. *Nemes,* 347 Ill. 268.) In this case the record shows that prosecutrix, after she came from Carruthers' room, talked to her

mother, Dr. Himes and others in the reception room, but made no complaint. It was not until she went to a rest room on the tenth floor of the building, according to the testimony of her mother, that she made any complaint about it. Her mother said nothing to Carruthers of what prosecutrix told her but a day or two later called him up and asked him what he was going to do about it.

In determining the plausibility of the story of the prosecutrix in this case, we cannot overlook the undisputed fact that she, when she entered Carruthers' office, was a total stranger to him; that within a very few minutes, which she puts at not over twenty, he had taken indecent liberties with her and had raped her and had asked her not to tell anyone, to which she had refused to agree; that during that time he had answered the telephone; and if the witness Morel is to be believed, she came into the room twice during the time prosecutrix was there. Immediately after leaving Carruthers' office the prosecutrix, with her aunt and cousin, was re-admitted, and Carruthers explained an adjustment he said he had made, yet nothing was said or done to indicate that prosecutrix had been mistreated. There is no testimony that the aunt noticed anything unusual about her niece and no complaint was made either then or in Dr. Himes' office to her mother later. No protest appears to have been made by her mother until a later day. Two days later prosecutrix was taken to the office of Dr. Loffler, who testified that he examined the private parts of the prosecutrix and the hymen had been ruptured and the parts were swollen. On November 13 following, prosecutrix was examined by the physician for the juvenile court, who testified to a ruptured hymen and a dilated vagina. This was over three months after the date of the alleged crime. It taxes the credulity of any reasonable person to believe that under the circumstances surrounding the parties and with numerous persons in the

room just outside the unlocked door, this crime could have been committed without detection.

The acts of the prosecutrix and her mother were not of that spontaneous character which is corroborative of testimony of the character given. There is inherent improbability in the testimony of the prosecutrix under the undisputed evidence of surrounding facts and circumstances admitted to be true. This undisputed testimony not only does not corroborate the prosecutrix but tends to discredit her story.

This court has in numerous cases held that where a conviction of rape depends upon the testimony of the prosecuting witness and the defendant denies the charge, the testimony of the prosecutrix should be corroborated by some other evidence, fact or circumstances in the case. (*People* v. *Abbate,* 349 Ill. 147; *People* v. *Fitzgibbons,* 343 id. 69; *People* v. *Glasser,* 335 id. 263; *People* v. *Blanch,* 309 id. 426; *People* v. *Bolik,* 241 id. 394.) It is the duty of this court in a case such as this, to carefully consider the evidence, and if it is not sufficient to remove reasonable doubt of the guilt of the defendant, the judgment should be reversed. (*People* v. *Abbate, supra; People* v. *Nemes, supra.*) We are of the opinion, from the improbable features of the story of this prosecuting witness, and the lack of any substantial corroboration of that story, this judgment of conviction cannot stand. As it appears that all persons present at the time were called as witnesses, there is no occasion to return this case for another trial, and the other alleged errors need not be considered. The judgment of the criminal court of Cook county is reversed.

*Judgment reversed.*