(No. 31617.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LESLIE KIDD *et al.,* Plaintiffs in Error.

*Opinion filed November 27, 1951.*

CHARLES A. BELLOWS, of Chicago, for plaintiff in error Leslie Kidd.

FRANK A. MCDONNELL, of Chicago, (WILLIAM L. CARLIN, and LOUIS A. ROSENTHAL, of counsel,) for plaintiff in error Bert McClellan.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR F. MANNING, WILLIAM J. MCGAH, JR., and JAMES A. BROWN, all of Chicago, of counsel,) for the People.

Mr. CHIEF JUSTICE DAILY delivered the opinion of the court:

Plaintiffs in error, Leslie Kidd and Bert McClellan, were indicted at the September term, 1949, in the criminal court of Cook County, for the offense of assault with intent to commit murder. Both defendants were found guilty by a jury and were sentenced to the penitentiary. A writ of error has been sued out to review the judgment of conviction as to each defendant.

On August 26, 1949, at approximately 9:30 A.M., an attempt was made by two men in a light green, new Mercury automobile, to rob two bank messengers walking along Exchange Avenue in Chicago, on their way to deliver certain money and checks from the Live Stock National Bank to its branch in the Exchange Building. While the bank messengers hurried from the scene, John McFadden, a bank guard, who was accompanying them and a few feet behind them, drew his pistol and was fired upon by one of the occupants of the automobile. After an exchange of shots the would-be robbers fled without having accomplished their unlawful purpose. The bank guard was wounded during the affray. Each of the defendants claimed that he was not at the scene of the crime and interposed the defense of alibi. Error assigned is that the evidence fails to prove beyond all reasonable doubt that either of the defendants participated in the assault on the bank messengers and their guard.

An examination of the evidence presented by the State shows that neither the two messengers nor the bank guard, who exchanged shots with the two men in the car, were able to identify either one of them. The messengers ran away from the place of the crime upon seeing the shotgun in the hands of one of the men and upon hearing him shout that it was a hold-up. One of the messengers testified that the driver of the car had a hat pulled down over his face and the other occupant had a mask on his face, and that it was impossible to see either of their faces. The guard said that he did not see the driver of the car and that the man on the right side of the car with the shotgun, who shot at him, had something over his head which reached down to his shoulders. A pie-delivery truck was parked facing south at the intersection of Exchange Avenue and Dexter. The driver saw the car come from Exchange Avenue with a masked man on the right side pointing a shotgun out of the window. He says there were two men in the car but he was unable to identify them. John Lynch, a city fireman, testified that he was about one-half block away when he heard the shots; that he saw a car turn the corner, but the driver was hunched over and he was unable to see his face.

There were no witnesses who identified plaintiff in error Kidd as being present at the scene of the crime, but two did point out McClellan in the court room as one whom they saw there. Pearl Nutley, a switchboard operator and typist, employed by the Chicago Daily Drover's Journal, testified that she heard a gunshot and looked out the window and saw a man standing almost directly across the street. He held a gun in his hand and appeared to have been wounded in the shoulder and stomach. She saw another man who was bareheaded, and who had a white shirt on, run from behind a light green car which was parked facing east. This man got into the driver's seat of the car and drove away at a high rate of speed, making

a wide turn south into Dexter Avenue. This occurrence took place about 9:30 in the morning of August 26, 1949. Later, at a show-up of suspects at the police station, she requested that one of the men be required to run. After observing his gait as he ran, she identified him as the man she saw running after she heard the shot. At the trial she pointed out McClellan as that man.

A truck driver, Ted Paholski, testified that he was proceeding in his truck west on Exchange Avenue after the shooting and an automobile approached him on the wrong side of the street at a high rate of speed and turned south into Dexter Avenue. He said he was in a trance and was so scared that he could not tell the make of the car; that he did not see the front end of the car or how many people were in it. He did see the driver and related that the latter had on a brown dirty gray outfit and had a cap tipped high on his head. He identified McClellan at the trial as the driver. As against the testimony of witness Nutley relative to the man she saw running on the street, it will be seen that her statement that he wore a white shirt and was bareheaded, deviates from that of the truck driver. McFadden, the injured guard, testified at variance with her testimony also in that he said that he did not see anyone outside or around the car at any time. He said that it was about forty or fifty seconds from the time the car pulled up until it left; that when the car stopped he started shooting, firing two or three shots at the car before it got started and one shot as it started to get away.

Two twelve-year old girls, who resided about two miles from the scene of the crime, testified that about 30 to 60 minutes after the shooting, a light green car came down an alley near their homes, and passed between them as they were standing on opposite sides of the alley. They said the car proceeded across a nearby school yard where the driver got out, stooped down in a weed patch, and walked away, while the other occupant of the car drove

back in the same direction from which they had come. One of the girls pointed out plaintiff in error McClellan as being the first driver of the car, while the other girl, who was on the opposite side of the alley from the driver, said that she saw only the side of the other man's face but was pretty sure Leslie Kidd was in the car. She testified that she did not pay any attention to the man who drove the car away. Howard Atherton, another witness called by the State, told of seeing a man, whom he identified as McClellan, in a restaurant in the vicinity of the crime, at 9:25 A.M., and stated that he had a cap on and wore a dirty white shirt.

When police officers attempted to stop the plaintiff in error Kidd as he approached his home in his automobile several days after the crime, he drove away at high speed and led the officers a chase of approximately five miles through the city at a rate of speed sometimes attaining seventy miles an hour. There was nothing on his person or in his car at the time of his arrest, to connect him with the particular crime charged and he denied any complicity. McClellan was arrested at a hotel in Springfield, Illinois, about a week after the commission of the crime. He also denied any participation in the crime and explained his presence in Springfield as being on a belated honeymoon with his wife and on a visit with his brother, a Springfield businessman. His automobile, registered in his name, was parked on the street a short distance from the hotel, and he was registered at the hotel under his own name. A police fingerprint expert testified that fingerprints taken from the rear-view mirror of the light green Mercury sedan, which had been stolen just prior to the robbery and was found abandoned directly thereafter, were not the fingerprints of either of plaintiffs in error.

John Mahoney testified that he was an assistant foreman of the water department for the city of Chicago; that between 10 and 10:10 o'clock on the morning the crime

was committed, plaintiff in error Kidd, who had previously been in his employ, came to his office at Seventy-fourth Street and Hermitage Avenue, a number of miles from the scene of the crime, and asked him for a job, and that he was driving a green Pontiac at that time. Thomas Sheehan, called by the defense, testified that he saw plaintiff in error McClellan in a restaurant on Lorel Street between 9 and 9:30 on the morning of August 26 and that there was present with them one Karl Reinbold. Reinbold also testified that he saw and talked to McClellan in the restaurant between 9 and 9:30 that morning, and that McClellan was dressed in his work clothes. Joseph McAuliffe testified that he saw McClellan on the morning in question between 9:20 and 9:30 at his place of work in the stockyards, and talked to him, and that McClellan then walked away toward where the restaurant was located. Michael Joyce, who also worked in the stockyards as a trader, said he saw McClellan two or three times at the stockyards between 8 and 11 o'clock on the morning of August 26 and there talked to him.

The purpose of reviewing a judgment of conviction in a criminal case is to determine whether the defendant has had a fair trial under the law and whether his conviction is based upon evidence establishing his guilt beyond a reasonable doubt. (*People* v. *Barad,* 362 Ill. 584.) In a criminal case the burden rests upon the People not only to prove beyond a reasonable doubt the commission of the crime charged, but also to establish by the same degree of proof the perpetration of the crime by the person accused. (*People* v. *Grizzel,* 382 Ill. 11; *People* v. *Buchholz,* 363 Ill. 270.) On writ of error it becomes the duty of this court to carefully review the evidence, and if it is not sufficient to remove all reasonable doubt of the guilt of the defendant and to create an abiding conviction that he is guilty, the conviction will be reversed. *People* v. *Botulinski,* 383 Ill. 608.

Applying these principles of law to the record before us, we find no evidence which either directly or satisfactorily proves that the defendant Kidd was one of the perpetrators of the crime charged. The testimony of the two girls, which was shaken greatly on cross-examination, that they saw a man whom one girl identified as Kidd, in the company of another man whom the other girl identified as McClellan, at a time and place removed from the scene of the crime, was the only direct evidence, other than that of alibi witnesses, of anyone seeing Kidd on that day. It cannot be said that this vague and uncertain evidence is sufficient to produce an abiding conviction of his guilt. The fact that he attempted to prevent his arrest by flight, when approached by officers some days later, was competent evidence indicative of a guilty mind. (*Jamison* v. *People,* 145 Ill. 357.) However, the fact that he fled when approached by police officers, raises no legal presumption that he is guilty of the particular crime charged in the indictment. The fact of flight is a circumstance which may be considered by the jury in connection with all the other facts and circumstances in evidence as tending to prove guilt. (*People* v. *Weber,* 401 Ill. 584; *People* v. *Schaffner,* 382 Ill. 266; *People* v. *Herbert,* 361 Ill. 64.) It is our opinion that the evidence of flight in this case, when measured against the vague testimony of the witnesses for the prosecution and the defense of alibi which was supported by a disinterested witness, is not a strong enough circumstance to remove the doubt of Kidd's guilt.

We have, likewise, carefully examined the whole record insofar as it concerns the defendant McClellan. The evidence of the two girls putting him in Kidd's company at a place and time away from the scene of the crime means little of itself and has no probative value since there is no other evidence, direct or circumstantial, which connects Kidd with the crime or connects the two men at the scene of its enactment. No one places McClellan at or near the

scene of the crime except the witnesses Nutley and Paholski, and his conviction must stand or fall upon their evidence of identification. As previously related, the statements of the witness Nutley that McClellan was out of the car, was bareheaded and wore a white shirt, are in direct conflict with the testimony of the other prosecution witnesses who say that he did not get out of the car; that he wore a dirty gray or brown shirt and that he wore a peaked cap. These differences, along with the guard's statement that the car stopped less than a minute and that it sped away immediately when he opened fire, conflict to such an extent with the statements of the witness Nutley, who says she did not look out the window until she heard a shot, that a serious doubt is presented as to whether the witness might not have seen a person not involved in the hold-up. Such doubt is further resolved when one considers that the guard and bank messengers, who were on the street and in direct contact with the hold-up men, were unable to identify McClellan, and that the witness was able to identify him at the police station only by the gait and manner in which he ran.

The testimony of the truck driver, Paholski, in which he identified McClellan as the driver of the bandit car, takes on an air of improbability when weighed against his statements that he was in a "trance" and that the car approached him so fast that he could not determine its make or the number of occupants. Under the circumstances, we find it difficult to say that his identification of McClellan can be the type of evidence necessary for proof beyond a reasonable doubt, where a man's liberty depends almost solely on that identification. The unfavorable circumstances under which this witness was able to view and identify McClellan must again be considered in the light of the testimony of the other prosecution witnesses who were unable to identify him although given a more favorable opportunity to view the perpetrators of the crime.

The three alibi witnesses for McClellan place him in the stockyards before the time of the crime and in a nearby restaurant as late as 9:25 that morning. Atherton, a witness for the prosecution, likewise stated that McClellan was in the restaurant at 9:25 A.M. If defendant was in the restaurant at that time there exists an improbability that he could have committed the crime, for the bank messengers and guard were positive that they left the bank at 9:25 A.M. and that they had walked just a block and a half when the crime occurred.

This court has repeatedly held that in a criminal case the burden rests upon the prosecution not only to prove the crime charged beyond a reasonable doubt but also to establish by the same degree of proof the perpetration of the crime by the person accused. (*People* v. *Gooden,* 403 Ill. 455; *People* v. *Buchholz,* 363 Ill. 270.) While it is true that the identification and whereabouts of the defendant when the crime was committed are questions for the jury, a judgment of conviction cannot be permitted to stand when it can be seen from the entire record that there is a reasonable doubt of guilt. (*People* v. *Ricili,* 400 Ill. 309.) Evidence fairly tending to establish an alibi cannot be disregarded where the only evidence contradicting it rests upon the identity of the defendant as the man who committed the crime charged, and if, from the entire record, there is a reasonable doubt of the guilt of the defendant because of the uncertainty of identification, the conviction cannot stand. (*People* v. *Peck,* 358 Ill. 642; *People* v. *Burr,* 356 Ill. 452; *People* v. *McPheron,* 354 Ill. 381.) Further, as pointed out in the *Peck case,* the identification of one person by another who had never seen him before is an opinion or conclusion of the identifying witness, and the attendant circumstances, together with the probability or improbability of affording an opportunity for a definite identification, must be considered in weighing the evidence of identification of one stranger by another.

The record in this case discloses a serious question as to whether there is sufficient satisfactory evidence to establish, beyond all reasonable doubt, the identity of either plaintiff in error as the guilty man. In direct opposition to the proof of identification is the unimpeached testimony of witnesses which fairly tends to establish an alibi for each man. While the identification and whereabouts of plaintiffs in error at the time the crime was committed are questions for the jury, yet, where, from a consideration of all the evidence in the case, there remains a reasonable doubt of their guilt, the judgment of conviction should be reversed. (*People* v. *Gold*, 361 Ill. 23.) After a consideration of the whole record, we cannot say that the guilt and identity of either plaintiff in error is established as a moral certainty which admits of no reasonable doubt of guilt.

For the reasons herein set forth, the judgment of the criminal court against the defendants Leslie Kidd and Bert McClellan is reversed and the cause remanded for a new trial.

*Reversed and remanded.*