People of the State of Illinois, Defendant in Error, v. John R. Campbell, Plaintiff in Error.

Gen. No. 49,537.

First District, First Division.

June 8, 1964.

Rehearing denied July 27, 1964.

493

 

William H. Deer, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney, of Chicago, Fred G. Leach and E. Michael O'Brien, Assistant Attorney Generals, Elmer C. Kissane and Richard T. Buck, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, John R. Campbell, was indicted and tried for the crime of forcible rape. He entered a plea of not guilty and trial was had before the court after a jury had been waived. He was found guilty as charged in the indictment and after a post-trial hearing, at which his prior convictions for rape and narcotics addiction were considered, he was sentenced to the penitentiary for a term of from 15 to 30 years. The defendant's argument to us appears to be based mainly upon one contention of error. As stated in the brief for defendant:

> It is submitted that when the facts of this case are reviewed, it will be found that the evidence is insufficient to remove all reasonable doubt of the defendant's guilt . . . there is a difference between evidence tending to prove the commission of a crime and evidence tending to prove the commission of a crime by a particular individual. As has been said above, the evidence in this case indicates that the complaining witness was raped, and her testimony to the effect that she was raped appears to have been sufficiently corroborated. The only question which remains is whether she

494

was raped by the particular person charged with the crime.

The issue is thus whether the identification testimony by the complainant is sufficient to cause conviction when set against the evidence presented on behalf of the defendant.

The prosecutrix, a student at Roosevelt University, testified that at approximately 6:15 p. m. on the 26th of February, 1962, as she approached the apartment building in which she lived, she observed a man leaving the hallway entrance. She entered the vestibule which was well lighted and was about to unlock her mailbox and hallway door when the same man re-entered the vestibule carrying a package. Standing just a few feet from the prosecutrix, the defendant, while facing her, asked if she knew the people whose name was on the package. She replied that she did know them and pointed out their mailbox. As she was explaining that he needed a key to open the inside hall door and therefore had to ring the doorbell to gain entrance, the defendant pulled out a knife and said, "Give me your money." The prosecutrix gave the man her purse. He then put the knife against her throat and forced her to accompany him through a side door of the building into an alley. He then said, "This is a good place. I won't hurt you if you do what I say." They walked down the alley and he pushed her under the porch of a building. After forcing her to partially disrobe, he raped her. It was dusk when the rape occurred and the prosecutrix testified that during the assault she noticed a scar or indentation on the assailant's left cheek. After the intercourse he told her that she would be shown photographs by the authorities, but that if she identified him, he would kill her. The prosecutrix further testified that after the rape she went to the nearby apartment of some friends

495

and told them of the attack. One of the friends testifying for the State substantiated the prosecutrix's testimony. This witness testified that at the time in question prosecutrix came to her apartment in a hysterical condition, that her face and clothes were filthy and that she said she had been raped. The police were then called and the prosecutrix was taken to the hospital where she was examined by a doctor. She said the police were at the hospital.

On the day immediately following the assault the prosecutrix first identified the defendant as her attacker by picking his photograph from among four books of police photographs shown her. On March 3rd she was present at a police lineup, but failed to identify anyone there as the assailant. The defendant was not in that lineup. He was, however, in a lineup of ten persons on March 7th, at which time prosecutrix identified him as the man who had raped her. A police officer testified and corroborated her unhesitant identification of the defendant.

In the face of this evidence the defense offered two witnesses. One witness, Frazier, who was under arrest for another crime and coincidentally in the same room in which the lineup was conducted, contradicted the prosecutrix's testimony on minor points and testified that the complaining witness was uncertain in her identification and that she only identified the defendant after a conversation with police officers. The prosecutrix on rebuttal testified that, "I did not at any time say that I could not identify my assailant . . . I did not say that the person I identified did not look like the man who attacked me." In addition, a police officer called as a rebuttal witness said that Frazier was seated in such a position and at such a distance from the area of the lineup that his alleged careful observation would have been impossible. The trial judge made it clear that he did not believe Fra-

zier. He characterized his demeanor as being "of the poorest" and observed that "you can't be impressed with that kind of witness." The wife of the defendant was the other witness produced on his behalf. She testified that from 6:20 until 12 p. m. on the evening in question she, the defendant and her children, attended one running of a double-feature movie at a theatre one block from their home, but also only a few blocks from the scene of the crime.

■ Courts of this State have repeatedly held that where a case is tried without a jury the determination of the credibility of the witnesses and the weight to be given to their testimony is for the trial judge. This court will not substitute its judgment for that of the trial judge who saw and heard the witnesses. People v. Henson, 29 Ill2d 210, 193 NE2d 777; People v. Dillon, 24 Ill2d 122, 180 NE2d 503; People v. Sally, 17 Ill2d 578, 162 NE2d 306.

The fact that the trial judge failed to believe the witnesses for defendant would obviously not be sufficient to convict in the absence of clear and convincing identification testimony by the prosecutrix. We feel that her testimony was of a clear and convincing nature.

A review of the evidence reveals that the prosecutrix had ample opportunity to familiarize herself with the physical characteristics of the assailant. She saw him first as he emerged from the apartment building and again when he re-entered the hallway. He stood only a few feet from her in a well-lighted area during their conversation about the delivery of the package he carried. The assault was committed outdoors (under an open porch) and although it was dusk there was sufficient light for prosecutrix to see his features and to notice a scar-like mark on his face. The evidence adduced at the trial substantiated that the defendant had a scar or indentation in the same place

described by the complainant as being present on the face of her attacker. She also had an opportunity after the attack to observe him as he riffled through her purse and warned her against making a report of the rape. With these many opportunities for observation of her attacker it is not surprising that prosecutrix identified defendant's picture on the day after the assault and positively identified the defendant himself out of a ten-man lineup the first time he was brought before her.

■ Although the defendant, at one point, appears to concede that the only question to be considered is the sufficiency of the identification testimony, he later argues that the testimony of the complaining witness was not corroborated in a substantial manner. In support of this proposition defendant cites People v. Carruthers, 379 Ill 388, 41 NE2d 521; People v. Silva, 405 Ill 158, 89 NE2d 800 and People v. Glasser, 335 Ill 263, 167 NE 43, in which rape convictions were reversed on the ground that the complainants' stories were not corroborated. The telling factor in those three cases was that the prosecutrixes' own versions of the respective rapes were highly improbable and cast doubt upon their veracity. Nor is the instant case like People v. Scott, 407 Ill 301, 95 NE2d 315, where the proof to support a conviction of forcible rape was not clear and convincing or like People v. Kazmierczyk, 357 Ill 592, 192 NE 657, where much of the testimony of the complaining witness was found to be discredited. In the case at bar the comlainant told a simple and believable story of a forcible attack made upon her by an unknown armed assailant. In such a situation the principle enunciated in the Carruthers, Silva and Glasser cases are not in point. We turn rather to the opinion of our Supreme Court in a case factually similar to the case at bar. In People v. Mack, 25 Ill2d 416, 420, 185 NE2d 154, the Court said:

498

Although the record suggests that it would have been possible for the State to have produced additional corroborating evidence, such evidence would have merely strengthened the uncontradicted testimony of the complaining witness that she had been robbed and raped. It would have shed no light on the disputed question of the identity of the defendant as the person who committed these crimes. The testimony of the complaining witness is not inconsistent nor does there appear to be any reason for regarding it as unworthy of belief. Under these circumstances, we cannot say that her testimony is insufficient to establish the crime of rape, without further corroborating evidence.

Also see People v. Brown, 29 Ill2d 375, 194 NE2d 326.

Affirmed.

MURPHY, P. J. and KLUCZYNSKI, J., concur.