The People of the State of Illinois, Plaintiff-Appellee, v.
James D. Ritchie, Defendant-Appellant.

Gen. No. 10,636.

Fourth District.

January 11, 1966.

Supplemental opinion, February 3, 1966.

Rehearing denied February 3, 1966.

McCoy, Ming & Black, of Chicago (Ellis E. Reid, of counsel), for appellant.

John J. Bresee, State's Attorney of Champaign County, of Urbana, for appellee.

TRAPP, J.

Defendant appeals from a judgment of conviction following a bench trial upon an indictment which in one count charges rape, and in a second count charges burglary with intention to commit rape.

It is urged that the judgment should be reversed for failure to prove the defendant guilty beyond a reasonable doubt in, (1) the identification of the defendant as the one committing the offense, and (2) that rape was, in fact, committed. Finally, it is urged that the defendant was denied constitutional due process and equal protection of the law because of the failure to have made a stenographic report of the proceedings at the preliminary hearing upon the charges, and that by reason of such failure the defendant was unable to impeach the complaining witness.

The questions of proof of the elements of the offenses beyond a reasonable doubt arise under the following matters of evidence: The complaining witness was a 23-year-old unmarried woman employed at the Chanute Air Force Base. She resided alone in a house trailer with the address 218 West Grove in Rantoul, Illinois. This house trailer was one of a number of such trailers situated in a park or area devoted to such housing. The complaining witness was employed at the Chanute Air Force Base and the defendant is an enlisted man stationed at such base, but all of the evidence was that each was unknown to the other prior to the time of the offense charged.

The State's evidence of the occurrence is that at about 3:00 a. m. on July 10, 1964, the complaining witness heard a noise outside the trailer window at the head of her bed, then a noise at the locked screen door and that a man entered the room. There was no light illuminating the room, but there was a light in the bathroom. The details of the testimony concerning the conversation and of the struggle that ensued are not essential to the issue, except to say that there was testimony as to the inci-

dental slapping and choking as a part of the assault upon the complaining witness, and that the intruder fled when she managed to scream.

The witness thereafter turned on the light and discovered a wallet on the floor. This proved to contain the airman's identification card and other documents of the defendant. She called the Rantoul police and Sergeant Baxter arrived promptly. The evidence is that while making the telephone report, the witness only said that a man had broken into her trailer and that she had his wallet. The testimony of Sgt. Baxter is that immediately upon his arrival the witness gave him the wallet and stated that she had been raped, that he examined the bedroom and observed that it was in disarray and that articles had been knocked to the floor. He observed the condition of the door and testified to details which justify the conclusion that it had been forced. Sgt. Baxter also testified that he and the witness looked at the defendant's photograph on the identification card and that the witness stated that the intruder was the man whose photograph appeared. She described him as blond, about 6 feet tall, wearing dark trousers with a light colored shirt. The identification card described the defendant as being 5 feet 10 inches tall with red hair.

Baxter testified that following a short examination of the premises he suggested that the witness have a medical exam and that she immediately agreed, stating that she would dress and that a neighbor would bring her to the police station in ten minutes. Baxter then left and arranged for a physician to make the medical examination. He testified that the witness arrived at the police station almost at the same time as he, Baxter, did.

The doctor testified, in summary, that his medical examination was not conclusive as to the fact of rape, that he found no trace of spermatozoa, that the hymenal range was not intact but that he observed no fresh injuries to the hymen, and that he observed no contusions

either in the genital area, or about the face and neck where complaining witness had testified to being slapped and choked.

Baxter testified that following the medical examination of the witness, he and Sergeant Rarrick of the Air Force Police returned to the trailer and examined the area for possible evidence. The testimony is that directly beneath the bedroom window of the trailer were discovered "numerous prints . . . measured 2.3 inches by 2.7 inches in the bare earth." These prints were photographed at about 8:30 a. m. on July 10th and the photographs were admitted into evidence. Without the details of the search, Baxter and Rarrick arrested the defendant at about 5:10 a. m. in the vicinity of an entrance to the Air Force Base. At that time the defendant was carrying several phonograph records. He was dressed in a light blue knit "T" shirt with colored one inch dark blue stripes upon the front and dark colored trousers. There was a walking cast on his right foot.

The evidence is that at the time of making the arrest, Baxter asked the defendant if he had been in the area of 218 West Grove prior to the time of the arrest. Defendant answered that to the best of his recollection he did not think so. In reply to a question, defendant stated that prior to the arrest he had just been walking around. Baxter testified that, in his opinion, the defendant had been drinking but was not intoxicated at the time. Defendant was asked for his wallet and he stated that he had apparently lost it and that he had first noticed the loss when he was asked for it at the time of the arrest.

During the day of July 10th the walking cast was removed at the Air Force Base and such cast was admitted into evidence. The "heel" of the walking cast was not admitted into evidence, as it appears that it was not identified or marked for identification at the time of removal. The defendant testified that the "heel" present

306

in court and sought to be admitted into evidence was similar to the one he was wearing on the date in question. It appears that on the same date a new cast was applied and that the defendant continued to wear it for a month or more.

The substance of defendant's testimony, as well as of his statements made to the police, is that on July 9, 1964, he went off duty at approximately 4:30 p. m., that he wrote a letter to his wife and then went to the Enlisted Men's Club and had some beer, whiskey and coke, that he remained there until 8:00 or 8:30 p. m. when he called a cab and went to a tavern known as the Caravan, mailing the letter to his wife en route. He stayed at the Caravan until it closed at about 1:00 a. m. While there he struck up an acquaintanceship with some Air Force men, several of whom were commissioned officers. He bought a bottle of whiskey and joined these men as they proceeded to a party that was held at the residence of Lieutenant Wetter at 401 North Tanner Street. The defendant left this address and was taken to the Air Force Base to procure some phonograph records and returned to the party.

Lt. Wetter verifies the fact that the defendant left and returned with some phonograph records and that the defendant left alone at about 2:45 a. m. on foot, so far as the witness knew. The testimony of the defendant is that as he left someone offered to drive him to the base but that he said that he would walk. The defendant testifies that all that he remembers after leaving is that he was walking around and through Rantoul until he was arrested, and that it must have been raining, or that it had rained, as his foot kept getting wet. He also testified that he was scheduled to report for duty at 7:30 a. m. on July 10th.

■ Upon the issue of the identification of the defendant beyond a reasonable doubt, defendant's counsel points out that it is the duty of the court to examine the

evidence with the greatest of care and that this is particularly so where the offense charged is rape. We accept such view completely. It must be recognized, however, that the circumstances of this offense frequently includes surprise and confusion as well as fierce struggle, and that such circumstances are not conducive to obtaining a precise description of the offender. People v. Evans, 25 Ill2d 194 at p 201, 184 NE2d 836.

Defendant cites People v. McGee, 21 Ill2d 440, 173 NE2d 434; People v. Kidd, 410 Ill 271, 102 NE2d 141, and People v. Fiorita, 339 Ill 78, 170 NE 690, as authority requiring this court to hold that there has not been a sufficient identification so that the case must be reversed. In each of these cases, not only was the identification vague and inconclusive and based upon observations made under the most dubious circumstances, but there were no circumstances corroborating such identifications, and the testimony of the identifying witnesses was directly contradicted by the testimony of more than one disinterested witness which supported the defendant's alibi.

■ The complaining witness testified that her assailant was blond and was limping with his right foot. These items are corroborated and appear to be the fact. Sgt. Baxter states that when he first called at the trailer the witness stated that the man wore dark trousers. It is argued that her description failed because she stated to Sgt. Baxter, and testified as well, that he wore a white or light shirt and failed to mention the wide dark stripes on the shirt. The testimony of the defendant, as well as that of Sgt. Baxter is, however, that these stripes were only on the front of the shirt, and taking into account the circumstances of the struggle testified to, we cannot say that the testimony fails by reason of the omission of reference to the stripes.

■ It is also argued that the identification of the defendant by the complaining witness is inadequate be-

cause she had seen the defendant's photograph upon the Air Force identification card, and hence, her identification of the defendant in the courtroom and at the occasion on July 14th when she picked the defendant's photograph from a group of 18 photographs of men who had been arrested in Rantoul, is tainted. It appears, however, in this case that there are facts and circumstances which corroborate the identification made by the witness. The most obvious one is the fact that his wallet was found on the floor of the bedroom of the house trailer. In the strict sense, there was no scientific identification of the footprints and prints apparently made by the "heel" of the walking cast. The trial court noted the testimony however, and the photographs of such prints, and they are certainly not inconsistent with the fact that defendant was present at the window of the house trailer.

Recalling the authorities cited by the defendant and noted above, as to matters of alibi, there is, on the contrary, no corroboration of defendant's statement that from 2:45 a. m. until 5:10 a. m. on July 10th, he was simply walking around Rantoul, if not in the rain, at least under conditions which caused him to state that his foot became wet.

■ ■ It is further urged that there is no proof beyond a reasonable doubt that there was, in fact, a rape, and it is contended that there is no corroboration of the testimony of the complaining witness that such did occur. The testimony of the witness is that there was a penetration by the male sex organ. This was denied by the defendant, as he contended that he was not there. It has been held that a corroborating factor, as to a charge of rape, is the making of a prompt and spontaneous statement by the injured party. The defendant contends that such complaint is absent because when the witness telephoned the Rantoul police, she only stated that a man had broken into her trailer and that she had his wallet. There is no contradiction to the evidence that

309

Sgt. Baxter came to the trailer in a matter of minutes and that immediately upon his arrival complaint was made of the rape. Considering that under the circumstances the telephone call to the police was a logical means of getting assistance promptly, we cannot say that there was an absence of a spontaneous and prompt statement.

In addition to the making of the complaint, the evidence is that the complaining witness immediately and without hesitation agreed to the suggested medical examination and promptly appeared for such examination as she had been requested to do.

While the medical evidence is not conclusive upon the issue of the fact of the rape, the witness testified that she was struggling with the intruder, that the sex act was not completed and that when the defendant removed his hand from her mouth, she screamed and he departed. It is the rather sophisticated argument of the defendant that the complaining witness testified that she had had no sexual experience and that she would, therefore, not be able to say whether or not the sex act had been completed; that it is not reasonable to suppose that a 23-year-old woman living alone in a house trailer near an Air Force Base would be a virgin in these days and times, but that we should assume that she complained of the rape because she knew that a medical examination would raise a question as to her virginity. It is apparent, of course, that the absence of virginity is not relevant to the issue of rape. There is no contention that there was a consent. A moment's consideration makes reasonable the conclusion that if the complaining witness was as knowledgeable as is argued, and was concerned with the possible disclosures of a medical examination, she would not have made the complaint of rape but only a complaint of burglary. The evidence is that neither the complaining witness nor the defendant were acquainted and there is no evidence which suggests a reason for the making of a false charge of rape.

310

Defendant cites certain cases which are stated to require the reversal of this case upon the issue of rape. In People v. Carruthers, 379 Ill 388, 41 NE2d 521, the medical examination made two days after the alleged act indicated the rape of a 12-year-old-girl. The case was reversed, however, because there had been no spontaneous complaint, the testimony of the complaining witness "taxed the credulity of any reasonable person" and the undisputed testimony discredited her account of the offense.

Again, in People v. Kazmierczyk, 357 Ill 592, 192 NE 657, there was no prompt and spontaneous complaint concerning the offense, and there were no corroborating facts or circumstances, but rather there was testimony contradictory to the testimony of the complaining witness. In People v. Glasser, 335 Ill 263, 167 NE 43, the circumstances of the offense testified to by the complaining witness were contradicted by the testimony of disinterested witnesses. Finally, in People v. Scott, 407 Ill 301, 95 NE2d 315, there was no prompt or spontaneous complaint and the circumstance that the complaining witness stayed in the defendant's apartment for two days cooking and doing the laundry when she could have fled caused the court to conclude that she did not resist only to be overcome by the superior strength of the defendant.

■ ■ The defendant urges that there has been a denial of due process and a denial of the equal protection of the laws under the State and Federal Constitutions. His position is that there was no stenographic transcript made at the preliminary hearing and that by reason of such fact, he did not have the transcript available to impeach the testimony of the complaining witness at the trial. While the fact is not in the record, counsel states that in Cook County a stenographic report of the preliminary hearing is made and that such would be available for purposes of impeachment, if it was desired. He further contends that the difference in the procedure at a

preliminary hearing in Champaign County and in Cook County amounts to a denial of due process and the deprivation of the equal protection of the law. He cites chap 37, sec 163–b (Ill Rev Stats), which he quotes in part:

"The reporter shall take full stenographic notes of the evidence in trials before the court before which he is appointed, and stenographic notes of such other proceedings and trials as directed by the court and shall furnish one transcript of them, if requested, by either party to the suit, or by his attorney, or by the judge of the court, to the person requesting it . . . ,"

and urges that the language of such section requires the stenographic reporting of the preliminary hearing.

Under art VI, sec 5 of the Illinois Constitution, our Supreme Court has the ultimate determination of questions under State and Federal Constitutions in so far as the courts of this State are concerned. We believe that People v. Morris, 30 Ill2d 406, 197 NE2d 433, determines the proposition stated. In an opinion filed March 18, 1964, prior to the date of the offense in issue, the Supreme Court considered the point raised here. In that case there was, in fact, a stenographic transcript of the preliminary hearing held in Cook County, but a copy of the same was refused, or otherwise was not supplied to the indigent defendant. The court held that transcripts of preliminary hearings were distinguishable from the transcript of the trial which must be supplied to an indigent defendant under Griffin v. Illinois, 351 US 12, 100 Law Ed 891, and that nothing in the Griffin opinion required the supplying of transcripts of preliminary hearings.

Mr. Justice Schaeffer, specially concurring, expressed the view that where a court reporter was present at the preliminary hearing, the rule of the Griffin opinion required the furnishing of a transcript upon request.

The constitutional requirement contended for by the defendant is not supported under the strictest views stated in the Norris case, but rather it appears that the constitutional question raised has been decided contrary to the argument of the defendant.

Examination of the record discloses no request for taking stenographic report of the preliminary hearing, and it does not appear that any limitations were imposed by the trial court, either upon the cross-examination of the complaining witness, or upon any attempt to impeach her testimony at the trial.

 The trial court imposed a sentence of 15 years to life as to each count of the indictment, such sentences to run concurrently. We must note these sentences in the light of the development of the law upon the matter of proper sentencing where there has been a conviction upon separate counts of the same indictment, and it appears that each indicted offense concerns the same transaction.

In People v. McMullen, 400 Ill 253, 79 NE2d 470, the Supreme Court held that a convicted person was not prejudiced when concurrent sentences were imposed under the circumstances stated. A change of view may be noted, however, in People v. Stingley, 414 Ill 398, 111 NE2d 548, where consecutive sentences had been imposed. While the judgment of the lower court was affirmed, the Court found that the convicted person was prejudiced by the consecutive sentences imposed and held, in effect, that the State was entitled to but one satisfaction of penalty under the indictment. It appears that the effective result of the decision was to hold that the consecutive sentences should be served as though concurrent, thus exacting the one satisfaction of penalty.

A further development of the view of the Supreme Court is found in People v. Schlenger, 13 Ill2d 63, 147 NE2d 316 (1958). Therein the court concluded that concurrent sentences for separate offenses occurring as a

part of the same conduct or series of acts were prejudicial and determined that the proper procedure for the reviewing court was to reverse the judgment as to the lesser offense. The same rule and procedure was followed in People v. Squires, 27 Ill2d 518, 190 NE2d 361 (1963), where the sentences imposed were consecutive, and People v. Duszkewycz, 27 Ill2d 257, 189 NE2d 299, where the sentences were to be served concurrently.

The Criminal Code of 1961 makes specific provision with regard to sentences which may be imposed. Chap 38, § 1–7(m) (Ill Rev Stats 1963), states:

> "When a person shall have been convicted of 2 or more offenses which did not result from the same conduct, either before or after sentence has been pronounced upon him for either, the court in its discretion may order that the term of imprisonment upon any one of the convictions may commence at the expiration of the term of imprisonment upon any other of the offenses."

The Criminal Code, cited as above, in § 2–4 provides the following definition:

> "'Conduct' means an act or a series of acts, and the accompanying mental state."

The committee which prepared the draft of the Criminal Code adopted by the Legislature, has noted in its comment to § 1–7(m), that such language was intended to codify the holding in Schlenger so that if the offenses charged result from the same conduct, the defendant may not be sentenced on both, either concurrently or consecutively.

The indictment in this case includes a count charging rape and a count charging burglary with intent to commit rape. We must conclude that upon the record of this case such counts were presented to and considered

by the court as a part of the same conduct or transaction, and that, under the cited decisions and the subsequent statutory enactment, the concurrent sentences imposed are not authorized by law.

While under the statute, rape and burglary are each designated as a forcible felony (Ill Rev Stats 1963, c 38, § 2–8), we believe the conviction for rape to be the graver offense. The judgment upon the count for rape is affirmed. Under the statute and the cited authorities, the judgment upon the indictment for burglary must be reversed.

Judgment on the first count is affirmed.

Judgment on the second count is reversed.

SMITH and CRAVEN, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF PETITION FOR REHEARING

TRAPP, P. J.
Upon petition for rehearing, the prosecution urges that this court erred in reversing the judgment of the trial court as to the sentence upon the conviction of burglary with intent to commit rape.

It is contended that rape and burglary are distinct substantive offenses, each requiring proof of differing elements, but that chap 38, sec 3–3 (Ill Rev Stats) requires the State to proceed as to each in a single prosecution. It is argued as analogy that had there been separate trials upon the separate counts in one indictment, or trials upon separate indictments, the conviction of the defendant in one trial on a charge of rape would not bar a conviction of the same defendant on a charge of burglary at a separate trial.

315

It is pointed out that in People v. Stingley, 414 Ill 398, 111 NE2d 548, the counts of assault with intent to rape and assault with intent to murder concerned the same act and the same victim; that in People v. Schlenger, 13 Ill2d 63, 147 NE2d 316, the counts for burglary and larceny related to the same amount of money taken from the same person; that in People v. Duszkewycz, 27 Ill2d 257, 189 NE2d 299, the counts charging rape and incest referred to a single act upon the same victim; and that in People v. Mullenhoff, 33 Ill2d 445, 211 NE2d 744, the separate counts concerned the same act upon the same victim. It is contended that here the count for rape and the count for burglary charge distinct substantive offenses which warrant imposition of sentence upon each conviction.

We believe that the conclusions reached in the opinion in this case are correct and are sustained upon review of People v. Golson, 32 Ill2d 398, 207 NE2d 68. In that case there was one indictment for the murder of Wilson and a second indictment for the murder of Spizzirri. The defendants were tried separately upon each indictment. Prior to the trial of the first indictment, the motion of defendants to consolidate the trials was denied. Prior to the trial upon the second indictment, the defendants' plea in bar was denied. The Supreme Court pointed out that the two indictments charged separate and distinct offenses so that the traditional plea of double jeopardy did not apply. It was the conclusion of the court, however, that the defendants were tried twice for identical misconduct, i. e., participation in an illegal venture in which two men were killed and that fundamental fairness to the accused would not permit a second trial in this case. The court said:

> "To determine, as a matter of legal semantics, that two indictable offenses were committed does not make these multiple trials fair, or vary the fact that

defendants were guilty of only one punishable course of conduct."

In accordance with such view, the Supreme Court reversed the judgment on the second indictment.

Accordingly, we adhere to our original opinion and the petition for rehearing is denied.