(No. 35791.—▮▮▮▮▮▮▮▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. CHESTER McGEE, Plaintiff in Error.

*Opinion filed March 29, 1961.*

ARTHUR G. McLENDON, of Chicago, for plaintiff in error.

WILLIAM L. GUILD, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and FRANCIS X. RILEY, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Defendant, Chester McGee, was indicted in the criminal court of Cook County for the crime of burglary and, after a trial by jury, was found guilty and sentenced to the penitentiary for a term of not less than one nor more than twenty years. He prosecutes this writ of error for review.

It is undisputed that on the morning of June 14, 1959, some person broke and entered a six-room apartment in the city of Chicago occupied by Donald W. Feltz, Sr., his wife and their two children. The crucial issue in the case is whether defendant was the intruder and, in this respect, the solitary circumstance connecting him with the offense was his identification by the complaining witnesses. Defendant, who was 39 years old and had no prior criminal record, denies his guilt and insists that the circumstances surrounding the identification were such that his guilt was not established beyond a reasonable doubt.

Feltz and his wife had just retired at approximately 2:45 A.M., when the latter heard a noise on the back porch. She could see a kitchen screen was being removed and told her husband that someone was getting into the apartment. He got out of bed and went to a closet for his rifle. As she watched the kitchen window, estimated as being five yards from her bed, Mrs. Feltz saw a man remove five flower pots from the window sill and place them on the back porch. He then put his head and shoulders through the window, forced the sash up with his shoulders and crawled into the kitchen where he stood up and moved from her sight. It appears there was a night light for the children *in* the kitchen, and, although its exact wattage was not shown, it was the testimony of Mr. Feltz that it lit up the kitchen "pretty good." Mrs. Feltz described the intruder to the police as a man with a lot of hair slicked down to his head and said he was wearing a plaid shirt, dark pants and no hat. When cross-examined at the trial she testified she could not see the intruder's features while he was in her

home, but identified him predominantly by his hair, clothing and build.

Feltz, after getting his rifle from a closet, stood behind the bedroom door holding the rifle as a club because he expected the man to enter the room. He waited a few seconds, put a shell into the rifle, then looked around the door and saw a man in the kitchen about fifteen feet away. He then jumped out and shouted to the man to "hold it," but the latter spun around and escaped through the back door. As he did, Feltz fired a shot at him. The description of the intruder Feltz gave to the police was that he had a lot of hair slicked down on his head, that he wore a red, almost plaid, jacket, and that he was a well-built man weighing about 160 pounds.

Two days later, at about 3:15 in the morning, defendant was arrested as he walked along the sidewalk in the vicinity of Halsted at 57th Street and it was his uncontradicted testimony that he was then returning from work to his home on 55th Street. A police officer testified defendant was wearing a red and black plaid jacket, black trousers and no hat; defendant stated he was wearing blue trousers, a dirty white hat, and a reversible jacket that was plaid on one side and rust brown on the other. He was likewise carrying a shopping bag containing a radio and a pair of trousers and it appears there is no question but what defendant was rightfully in possession of such articles.

One of the arresting officers first testified that defendant was belligerent and refused to explain his presence on the street, yet, at another stage of his testimony, the officer related that defendant gave the police a key to his home, to search it if they wished, and that he cooperated, except for being belligerent at the time of his arrest. In any event, defendant was taken to the police station, and, the same morning, the Feltzs were asked to come in and to view a lineup of suspects.

There is some dispute as to whether the Feltzs viewed

the lineup separately or together, but it was the testimony of both a police officer and Mr. Feltz that the latter pointed out defendant from a group of five or six men. On cross-examination, however, Feltz stated he had been shown a jacket after the lineup and admitted saying in a prior hearing that he was not positive as to defendant's identification until he had seen the jacket. By defendant's version, the police had him put the jacket on in the lineup, and he was the only prisoner with a jacket on. Mrs. Feltz testified that she had picked defendant out of a lineup of five men, all in their twenties, after being cautioned by a police officer not to make an identification unless she was sure. A police officer also testified simply that Mrs. Feltz had pointed defendant out, but the latter, when testifying in his own behalf, stated that Mrs. Feltz had looked him over for five to ten minutes and had conversed with police officers before identifying him. The jacket, upon which Mr. Feltz admittedly rested his identification, was not introduced in evidence at the trial.

The defendant denied that he committed the burglary. He testified that from 6:00 P.M. of June 13 to about 4:00 A.M. on June 14 he worked as a bartender at McGee's Lounge where he had been regularly employed since April. This alibi was corroborated by the testimony of Percy Mc-Gee, a brother of defendant and proprietor of McGee's Lounge; Doris Morris, a waitress at the tavern; Claudine McGee, the wife of Percy and also a bartender; Alfred McGee, a brother of defendant and manager of the tavern; and customers Mosley (a bus operator), Poole( a janitor), Blisset (a laundry worker), and Woodley (a hotel house-man), who were present in the tavern in the early morning hours of June 14.

Lenore Schmeski, called by the prosecution in rebuttal, identified defendant as a man who had come into her kitchen without invitation about five or ten minutes after midnight on June 14. She had also identified defendant from

a lineup at the police station prior to the trial. On cross-examination, however, she said that she had seen only the profile of the person in her home and that she had not seen him face to face. Whether or not the Schmeski residence was any where near the Feltz apartment was left to the speculation or individual knowledge of the jurors.

In a criminal case it is incumbent upon the prosecution to prove beyond a reasonable doubt not only the commission of the crime charged but also its perpetration by the accused. (*People* v. *Urbana,* 18 Ill.2d 81 ; *People* v. *Ashley,* 18 Ill.2d 272; *People* v. *Davis,* 14 Ill.2d 196.) And while the identification and whereabouts of the defendant at the time of the crime are questions for the jury, yet, where from the entire record there is a reasonable doubt as to the guilt of the accused, a judgment of conviction will not be permitted to stand. (*People* v. *Ricili,* 400 Ill. 309; *People* v. *Gold,* 361 Ill. 23.) Where the conviction of a defendant rests upon identification which is doubtful, vague and uncertain, and which does not produce an abiding conviction of guilt, it will be reversed. (*People* v. *Fiorita,* 339 Ill. 78; *People* v. *Kidd,* 410 Ill. 271.) Neither can we disregard the evidence of alibi where the sole and only evidence contradicting it rests upon the identity of the defendant as the man who committed the crime. *People* v. *Peck,* 358 Ill. 642; *People* v. *De Suno,* 354 Ill. 387.

From the record before us, we are of the opinion that the circumstances under which the identity witnesses viewed the intruder presented great opportunity for mistake, and that the identity of the defendant as the perpetrator of the crime was not established beyond all reasonable doubt. Assuming that the testimony of Lenore Schmeski was proper in rebuttal, a searching analysis of the evidence reveals that none of the identity witnesses had more than a fleeting view of the intruder and even then not under particularly favorable conditions. None of the witnesses ever claimed to have

a satisfactory view of the intruder's features. Indeed, Mrs. Feltz based her identification on the hair, clothing and build of defendant, Mrs. Schmeski rested hers on a profile view seen for a "couple of seconds" from one room to another, and Mr. Feltz admittedly could make positive identification only on the basis of the jacket shown to him by the police after he had viewed defendant in a lineup. And while identification on the basis of clothing is entitled to some weight, we cannot overlook in this case that Mrs. Feltz testified the intruder was dressed in a shirt, and that the jacket by which Feltz connected defendant to the crime was not introduced in evidence.

While we do not question the good faith of the witnesses, the uncertain lighting conditions, together with the distances involved when the Feltzs saw the intruder, is still another circumstance which tends to impair the weight to be afforded their testimony and leads us to conclude there was no real basis for positive identification. Had the night light in the kitchen given off the illumination now claimed, and had the witnesses observed the man for a satisfactory length of time, they would undoubtedly have been able to base their identification on some more substantial basis than they did.

Taken in conjunction with the uncontradicted evidence of an alibi, which is neither improbable nor such as taxes credulity, we are of the opinion there was not such positive identification here which fairly or reasonably supports the conviction. Cf. *People* v. *Dirkans,* 18 Ill.2d 300; *People* v. *Peck,* 358 Ill. 642; *People* v. *Gold,* 361 Ill. 23.

The judgment of the criminal court of Cook County is therefore reversed.

*Judgment reversed.*