THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAYMOND HANCOCK, Defendant-Appellant.

Third District   No. 3—85—0347

Opinion filed May 30, 1986.

1028

Thomas A. Lilien, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (Gerry R. Arnold, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Following a jury trial, the defendant, Raymond L. Hancock, was convicted of burglary (Ill. Rev. Stat. 1983, ch. 38, par. 19—1(a)), and incident to his four-year sentence of probation was ordered to serve six months in jail if he failed to pay restitution within 42 months.

The evidence at trial established the following. At approximately 4:50 a.m. on November 17, 1984, a cash register was stolen from the Joliet School of Beauty Culture (the school). Almost simultaneously, Curt Clark, a Northern Illinois Rail Company security officer, heard the school's front window break and then saw a black male exit with a large object. From a control tower at least 100 feet away, Dennis Kolodiejz, also heard the crash and observed someone crawl through the window carrying an object. Kolodiejz was able to observe the running suspect until 30 seconds before police stopped the individual who appeared to be the burglar. Meanwhile, Clark had driven to the school and had radioed Kolodiejz to notify the police. Clark described the suspect as a 6-foot-tall black male wearing a tan coat, a brown hat, dark pants, and "loud" tennis shoes.

Within five minutes of receiving the description, Joliet police officers Donald Edgerly and Steve Bajt stopped the defendant at 5 a.m., one and one-half blocks from the school. The officers found a cash register between 20 and 30 feet away from the defendant. No other persons or vehicles were in the vicinity at that time.

After the defendant explained to the officers that he was leaving CoCo's Lounge, he amended his story to explain that he had just left his mother's home, but was unable to recall the address. The officers observed that the defendant wore a tan coat, red tennis shoes, dark pants, gloves, and a hat. The officers transported the defendant to the school. There Clark identified the defendant as the suspect he had seen earlier. Kolodiejz verified that the defendant's clothes matched those of the suspect and that the cash register appeared to be the object the suspect had been carrying.

The defendant's wife, Sharon, verified that she left CoCo's Lounge with the defendant at 3 a.m. and then walked 30 minutes to the defendant's mother's home to deposit some aluminum cans that they had gathered. The pair then walked downtown to the bakery prior to walking an additional 45 minutes to her friend's house. At approximately 4:30 a.m., the defendant left Sharon to collect firewood for his mother.

In addition to corroborating Sharon's version of their activities on November 17, the defendant testified that at approximately 4:45 a.m., he observed three persons near a phone booth before he deliv-

ered aluminum cans to the residence he shared with his mother. His delivery was at approximately 5 a.m. The defendant then walked toward CoCo's which was near the lot where he intended to collect lumber. While he was in transit, the officers stopped the defendant. The defendant told them he was coming from CoCo's. The defendant denied that he had burglarized the school.

▉ The defendant initially argues that the evidence failed to identify him as the burglar beyond a reasonable doubt.

We acknowledge that the jury's province is to assess the weight and credibility of the identification testimony. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) However, we may not affirm a conviction if the identification was so vague, doubtful or uncertain (*People v. Byas* (1983), 117 Ill. App. 3d 979, 453 N.E.2d 1141), that it unreasonably, improbably or unsatisfactorily left reasonable doubt of the defendant's guilt. *People v. Lakins* (1977), 52 Ill. App. 3d 284, 367 N.E.2d 592.

▉ The jury appropriately weighs the identification testimony and relates it to the circumstances of the offense by considering the time of day involved; the witnesses' emphasis on the defendant's clothing; the witnesses' distance from the accused during their observations; how closely the defendant matched the offender's description; the duration of the observations; and the time and location of the defendant's arrest in relation to the offense. (*People v. Lakins* (1977), 52 Ill. App. 3d 284, 367 N.E.2d 592.) This court may also consider whether the perpetrator's dress was distinctive (*People v. Hughes* (1978), 59 Ill. App. 3d 860, 376 N.E.2d 372); whether the identification was based on the defendant's physical features (*People v. Glaze* (1977), 48 Ill. App. 3d 523, 362 N.E.2d 1287); and whether the defendant was viewed under circumstances which permitted a positive identification (*People v. Versher* (1977), 52 Ill. App. 3d 148, 367 N.E.2d 311), to decide whether the circumstances preceding the defendant's identification dispelled all reasonable doubt that the defendant committed the offense (*People v. Reed* (1968), 103 Ill. App. 2d 342, 243 N.E.2d 628).

▉ Based on the evidence, we conclude that the individual Clark observed was the same individual the officers apprehended. Therefore, we find that the defendant was identified as the burglar beyond a reasonable doubt. The defendant was apprehended near the burglary scene shortly after the crime was committed. The defendant and his clothes matched the description of the suspect who exited the school window with the cash register. Except for the people near the phone booth, the school vicinity was deserted. Clark and

Kolodiejz observed the defendant from a relatively short distance; and Kolodiejz watched the defendant until 30 seconds before the officers stopped the defendant. After closely and carefully observing the defendant, Clark was able to recognize the defendant by the defendant's physical characteristics and clothes. Our conclusion is not altered by the defendant's explanation for being near the crime scene at 5 a.m. The defendant must reasonably justify his presence or be judged by the improbability of his explanation. (*People v. Davis* (1968), 95 Ill. App. 2d 448, 237 N.E.2d 854.) Therefore, we find the evidence was not so unreasonable, improbable, or unsatisfactory as to raise reasonable doubt of the defendant's guilt.

█ █ The defendant next contends that the court erred in refusing his tendered circumstantial-evidence jury instruction. The State disputes the defendant's suggestion that the evidence of guilt was entirely circumstantial.

The court, over the defendant's objection, failed to include the second paragraph of Illinois Pattern Jury Instruction, Criminal, No. 3.02 (2d ed. 1981), which states: "You should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence." That paragraph is appropriately given when the proof of guilt as to each element of the offense is circumstantial. (*People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520.) Direct evidence of the crime alone is sufficient to preclude giving that paragraph. (*People v. Flowers* (1982), 111 Ill. App. 3d 348, 444 N.E.2d 242.) By definition, direct evidence such as eyewitness testimony, proves a fact without inference or presumption, whereas circumstantial evidence merely gives rise to a logical inference that the fact exists. *People v. Christiansen* (1969), 118 Ill. App. 2d 51, 254 N.E.2d 156.

█ We find that the evidence substantiating the offense was both direct and circumstantial. The burglary was committed when the burglar entered the school with the intent to commit a theft. The cash register was taken from the school. Two eyewitnesses saw the defendant exit the school. The State presented direct evidence that one of those witnesses identified the defendant as the burglar based on the defendant's size and clothes. Consequently, the court properly refused the defendant's tendered instruction.

█ Finally, the defendant argues that the court inappropriately ordered him to be imprisoned if he failed to pay restitution within 3½ years. The State responds that the issue is not ripe for review.

Incident to his four-year term of probation, the court ordered the defendant to either pay restitution within 3½ years, or serve

the last six months of his probationary term in the Will County jail.

Section 5—5—6 of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—6) provides that after determining that restitution is appropriate, the court shall order the restitution paid within a fixed time period. If the defendant, despite his financial ability to do so, wilfully refuses to pay the restitution, the court may either modify or revoke the defendant's sentence of probation or it may allow the defendant two additional years to pay. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—6.) To revoke or modify terms of the defendant's probation, a hearing is required. Ill. Rev. Stat. 1985, ch. 38, par. 1005—6—4.

Instead of merely attempting to insure that the defendant complied with his probationary terms, the court predetermined the defendant's fate in the event he failed to comply with the financial obligations the court had imposed. In anticipating a wilful violation, the court erred in ordering the defendant imprisoned if he fails to pay restitution within the fixed time period. Any wilful violation of the defendant's restitution order can best be handled by a petition to revoke probation. (*People v. Cottrell* (1986), 141 Ill. App. 3d 364.) Therefore, we vacate that portion of the defendant's sentence which imposed six months of imprisonment if the defendant fails to satisfy his financial obligations within 42 months.

Accordingly, the judgment of the circuit court of Will County is affirmed in part and vacated in part.

Affirmed in part and vacated in part.

SCOTT, P.J., and WOMBACHER, J., concur.