(No. 67605.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MICHAEL E. HERRETT, Appellant.

*Opinion filed May 23, 1990.—Rehearing denied October 1, 1990.*

CALVO, J., took no part.
CLARK, J., dissenting.

Robert Agostinelli, Deputy Defender, and Stephen Omolecki, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Terence M. Madsen and David E. Bindi, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE WARD delivered the opinion of the court:

Following a jury trial in the circuit court of St. Clair County, the defendant, Michael E. Herrett, was convicted of armed robbery and sentenced to 12 years' imprisonment. The appellate court (171 Ill. App. 3d 1167 (unpublished order)) affirmed the conviction pursuant to Supreme Court Rule 23 (107 Ill. 2d R. 23). We granted the defendant's petition for leave to appeal.

The defendant's conviction is the result of his participation in the armed robbery of a pawnshop in Cahokia, on May 31, 1986. George Bailey, the clerk who was working at the pawnshop on the day of the robbery, testified for the State. He stated that, at approximately 9:15 a.m. on May 31, 1986, a white man entered the

pawnshop and said that he wanted to look at a lady's ring. Five minutes later, a younger black man (the defendant, the State charges) entered the shop and said that he wanted to pawn a ring. As Bailey examined the ring, the black man drew a gun and ordered him to go to the back of the store. The white man began filling a bag with pawned jewelry from an open safe, while the black man took approximately $1,000 from the cash register and put it in his pockets. The black man also took money from Bailey's billfold. Before the two men left the store, the black man bound Bailey's ankles and wrists and covered his eyes with duct tape. Shortly thereafter, Bailey freed himself and called the police.

At the defendant's trial, Bailey described the black man as "probably in his early thirties, five-eight, five-nine, medium build, beard, kind of bushy hair." He testified that the black man wore a yellow "carcoat" that went down between his hip and his knee and looked like a raincoat. Bailey further testified that two or three days after the robbery, a Maplewood, Missouri, police officer came to his home and showed him seven photographs of black men to see if he could identify the black man who robbed him. Bailey testified that he picked out two photographs, one of the defendant and one of another black man. He could not positively identify either one. Bailey thought that the defendant's photograph looked like one of the robbers, although the hair in the photo looked different. Bailey also testified that the officer showed him pictures of white men and that he was able to positively identify the white robber from the photographs. Bailey concluded his testimony by stating that he was "ninety percent sure" that the defendant was the black robber.

On cross-examination, Bailey testified that he saw the black man's face only for a few seconds and that the lighting in the pawnshop was dim. He also admitted that

he had not told the police that the black man wore a hat during the robbery and that the black man's hair was protruding from underneath the hat. He did not recall describing the black man's coat as a baseball-type jacket, rather than a raincoat. He also testified that he had told the police that the photograph of the defendant looked like the black man who robbed him, but that the hair in the photograph looked different than the robber's hair.

Another witness of the State, Michael Springer, operated a business near the pawnshop. He testified that, shortly after 9 a.m. on the morning of the robbery, he noticed an older white man and a black man drive up to the pawnshop in a silver-gray 1977 Chevrolet Impala with Missouri license plates. Because the men were acting in a suspicious manner, he wrote down the license plate number of their automobile. He saw the men go into the pawnshop and observed their automobile leave the area 5 to 10 minutes later. When the police arrived at the pawnshop, Springer gave the police a description of the automobile he had seen, including its license plate number. Springer was unable to identify the persons in the automobile.

The State then called a number of police officers to testify concerning their investigation of the robbery. Their testimony established that the police traced the license plate number and learned that the vehicle belonged to Marie Shigemura, a resident of Maplewood, Missouri, a town that is about a 15-minute drive from Cahokia. Police officers from Maplewood and Cahokia went to the Shigemura residence within an hour of the robbery, at approximately 9:52 a.m. and observed the suspected vehicle in the driveway. The hood of the vehicle was warm, as though the car had recently been driven. Edward Shigemura, an Oriental man, came out of the house and told the police that the automobile was his and that it had not been recently driven. He also said

that no one else was in the house. He was then placed under arrest.

The police then called the residence's phone number and spoke to Mrs. Shigemura. Shortly afterward, they spoke with her in person at the door of the house. Approximately five to seven minutes later, Herrett came out of the house. His hair was rolled tightly to his scalp in braids ("corn-rowed"). Approximately five minutes later, an older white man, who matched the description of the white robber, came out. Both men were arrested.

The police obtained a search warrant for the Shigemura residence, which was executed at about 1:30 p.m. During the search, the police found numerous items of jewelry which were later identified as the items taken from the pawnshop. Two rolls of duct tape similar to that used to bind Mr. Bailey, a yellow raincoat and a pair of pants which matched the description of pants worn by the white man during the robbery were also found. No cash or weapons were found in the Shigemura residence, in the automobile or on the defendant's person.

The defense rested without presenting any testimony or other evidence. During closing arguments, defense counsel stressed that the fact that Herrett was at the Shigemura residence that morning did not prove that he was the black robber. Counsel noted that the cash and gun which were in the black robber's possession were never found. The defense attorney also pointed out the discrepancy between Bailey's description of the robber as having bushy hair and the fact that Herrett's hair was tightly braided, or "corn-rowed," at the time of his arrest. In rebuttal, the prosecutor remarked several times that there was no testimony or explanation for the presence of Herrett at the Shigemura residence that morning. As stated, the jury found Herrett guilty of armed robbery and the appellate court affirmed the conviction.

In this appeal, the defendant first claims that his conviction must be reversed because the evidence did not prove his guilt beyond reasonable doubt. When presented with a challenge to the sufficiency of the evidence, this court must affirm the conviction if, " 'after viewing the evidence in the light most favorable to the prosecution, [we conclude that] any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Collins* (1985), 106 Ill. 2d 237, 261, quoting *Johnson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

The defendant claims that a different standard of review applies in this case, because the evidence against him was entirely circumstantial. He claims that when a conviction rests solely upon circumstantial evidence, it must be reversed if the evidence is consistent with any "reasonable hypothesis" of innocence. (*People v. Lewellen* (1969), 43 Ill. 2d 74, 78; *People v. Willson* (1948), 401 Ill. 68, 79.) This court recently rejected the contention that a different standard of review governs in cases involving circumstantial evidence. (*People v. Pintos* (1989), 133 Ill. 2d 286, 291.) In *Pintos*, this court held that the reasonable doubt test should be applied to review the sufficiency of the evidence in all criminal cases, whether the evidence is direct or circumstantial. (*People v. Pintos* (1989), 133 Ill. 2d 286, 291; see also *People v. Eyler* (1989), 133 Ill. 2d 173, 191-92.) Moreover, the evidence against Herrett was not entirely circumstantial. His conviction was based, in part, upon Bailey's identification of Herrett as the black robber. Such identification testimony is clearly direct evidence. *People v. Jones* (1975), 60 Ill. 2d 300, 307; *People v. Hancock* (1986), 143 Ill. App. 3d 1027, 1031.

Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact

could have found Herrett guilty of armed robbery beyond reasonable doubt. The evidence introduced at trial established that Herrett was arrested at the Shigemura residence one hour after the robbery, with a man who matched the description of the white robber. The jewelry stolen in the robbery was found inside the residence where the defendant was found and the automobile used in the robbery was parked outside of the residence. In addition, Herrett was identified in court by the victim of the crime as the man who robbed the pawnshop.

Herrett argues, however, that Bailey's identification testimony is not entitled to weight because Bailey did not positively identify Herrett as the black robber. The fact that a witness does not positively identify a defendant at trial, however, does not render his testimony invalid (*People v. Kubat* (1983), 94 Ill. 2d 437, 475); it simply affects the weight the trier of fact will give the evidence (*People v. Jackson* (1987), 161 Ill. App. 3d 573, 584). The reliability of identification testimony depends upon a number of factors, including the witness' opportunity to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the length of time between the crime and the witness' identification, and the degree of certainty the witness exhibits in making the identification. (*People v. Slim* (1989), 127 Ill. 2d 302, 308.) Here, Bailey's trial testimony demonstrates that he had sufficient opportunity to see the defendant under circumstances permitting a reliable identification. Bailey testified that he had an opportunity to observe the assailant's face for several seconds when the robber reached down to cover his eyes with duct tape. He testified his face was only two feet from the assailant's at such time and that he was 90% certain that the defendant was the man who robbed him. Furthermore, two days after the robbery, Bailey chose the defendant's pho-

tograph from a police photo display as looking most similar to the person who robbed him.

The fact that Bailey described the black robber's hair as bushy while Herrett's hair was tightly braided in "corn rows" at the time of his arrest did not destroy the credibility of Bailey's identification. A witness need not describe the offender with complete accuracy; discrepancies and omissions of detail only affect the credibility of the witness and the weight which the trier of fact will give his testimony. (*People v. Slim* (1989), 127 Ill. 2d 302, 308; *People v. Johnson* (1986), 114 Ill. 2d 170, 190.) The jury in this case may have rationally concluded that Herrett's hair was bushy at the time of the robbery, as Bailey told the police, and that Herrett had braided his hair in the time between the robbery and the arrest.

The decisions which Herrett cites as support for his claim that the evidence here is insufficient to prove his guilt beyond reasonable doubt are distinguishable. (*People v. Cullotta* (1965), 32 Ill. 2d 502; *People v. McGee* (1961), 21 Ill. 2d 440; *People v. Byas* (1983), 117 Ill. App. 3d 979.) In *Cullotta, McGee* and *Byas,* the defendants' convictions were overturned because the evidence was found insufficient to prove beyond reasonable doubt that the defendant was the person who committed the crime. In each case, the only evidence which the State introduced against the defendant was the vague, uncertain and doubtful identification testimony of a witness. There was no evidence to corroborate the witness' identification of the accused. In addition, in each case there was compelling evidence to contradict the trial court's findings of guilt. (*People v. Cullotta* (1965), 32 Ill. 2d 502 (plausible evidence of alibi); *People v. McGee* (1961), 21 Ill. 2d 440 (uncontradicted alibi evidence); *People v. Byas* (1983), 117 Ill. App. 3d 979 (defendant's fingerprints were not found on items the assailant touched and the car used by the assailant could not be traced to the

defendant).) Here, however, the victim's identification of Herrett was corroborated by compelling circumstantial evidence. This evidence established that an automobile whose color, make and license plate number matched the description of the automobile used in the robbery was parked outside the Shigemura residence less than an hour after the robbery and its hood was warm, as the hood of an automobile would be that had recently been driven. Herrett was inside the Shigemura residence with a white male who matched the description of the white robber which Bailey gave to the police. Jewelry and other items stolen in the robbery were found inside the Shigemura residence when the police searched the premises. The jury was not required to disregard the inferences which would reasonably flow from this evidence.

Herrett claims that the fact that the stolen cash and the gun used in the robbery were never found supports the defense theory that a different black man robbed the pawnshop and then escaped with the cash and the gun before the police arrived at the Shigemura residence. Speculation that another person might have committed the offense, however, does not necessarily raise reasonable doubt as to the guilt of the accused. (*People v. Holloway* (1985), 131 Ill. App. 3d 290.) The jury in this case was not required to accept any possible explanation compatible with the defendant's innocence and elevate it to the status of reasonable doubt. (*People v. Arndt* (1972), 50 Ill. 2d 390, 396.) The jury may have rationally concluded that Herrett disposed of the gun on his way to the Shigemura residence and hid the stolen cash in a place where the police could not find it. This court will not substitute its judgment as to the weight of the disputed evidence for that of the trier of fact. (*People v. Johnson* (1986), 114 Ill. 2d 170, 190.) Viewing the facts in a light most favorable to the prosecution, we cannot say that the evidence was so unreasonable, improbable

or unsatisfactory that no rational trier of fact could have found Herrett guilty beyond reasonable doubt.

The defendant next contends that reversible error occurred when a witness for the State gave testimony which suggested to the jury that the defendant had been previously incarcerated. Officer Terrence McFarland testified on redirect examination by the State:

> "I advised Mr. Herrett of his constitutional rights per Miranda, and I asked him if he had been involved in the armed robbery in Cahokia and he informed me that he had never been in Cahokia, he only knew that Cahokia was in Illinois, and that if I thought that I was going to scare him into going to prison, I couldn't scare him. He said he knew about prison."

Evidence which suggests that the defendant committed crimes other than the one charged generally is inadmissible, unless relevant to some issue in the case. (*People v. Lindgren* (1980), 79 Ill. 2d 129.) The State concedes that the defendant's criminal record was not relevant here. It argues, however, that the officer's testimony regarding the defendant's statement that he knew about prison was ambiguous and not an impermissible reference to the defendant's criminal record. The defendant may have been referring to knowledge about prison acquired from friends, books and television, and not necessarily from personal experience. We need not decide the issue, however, because the defendant waived the right to raise the alleged error on appeal by failing to make a timely objection to the statement at trial. (*People v. Johnson* (1987), 119 Ill. 2d 119, 138-39; *People v. Hall* (1986), 114 Ill. 2d 376, 418.) Moreover, even if it could be said that the testimony was improper, the possibility that the jury concluded from the officer's testimony that the defendant had a criminal record and that the testimony prejudiced the defendant is entirely too speculative to be viewed as reversible error. See *People v. Yates* (1983), 98

Ill. 2d 502; *People v. Berlin* (1979), 75 Ill. 2d 266 (a jury would not automatically associate an assumed name with a criminal background).

Herrett finally contends that the prosecutor, in closing argument, improperly commented upon Herrett's post-arrest silence and failure to testify at trial. The comments to which Herrett objects occurred during the prosecutor's rebuttal argument. The prosecutor, in response to defense counsel's closing argument that a black man other than Herrett committed the robbery, made this statement, two sentences of which refer specifically to omissions by the defendant himself and others which refer to omissions of evidence that could have been supplied by the Shigemuras or other witnesses:

> "If Mr. Herrett wasn't involved in the armed robbery in Cahokia a half an hour before he was at the house, what was he doing there? Why was he there? You have no testimony about another black male being at that residence. There is no other evidence. You have no testimony as to why he was there. There's only one reason why he was there, he was involved in the armed robbery.
>
> * * *
>
> [Defense counsel's] theory that there was another robber is not borne out by the—if there was another robber, why did he leave the jewelry? There is no evidence of another robber. There's no testimony about that. And the reason, the biggest reason why you shouldn't believe his version, is that there is no reason given why Mr. Herrett was at that house, he doesn't live there. Why was he there? He was there because he was in Cahokia earlier. Did Mr. Herrett tell the police, well, there was another black man here and he left ten minutes ago? No, he didn't tell them that. Is that what you would do if you were innocent of an armed robbery and thought you were going to be charged? I think you would. He didn't tell them that.
>
> * * *
>
> There is no reasonable doubt. It's more than a coinci-

dence. There is no evidence to explain his presence at [the Shigemura residence]."

The defense counsel objected to this statement, and the court overruled the objection. The prosecutor finally stated:

"You have no evidence it's more than a coincidence, no explanation for him being there other than his participation in the armed robbery."

The record discloses that the defendant failed to object to all but one comment at trial. It is clear that a defendant must make a timely objection at trial and must renew the ground for objection in a written post-trial motion to preserve an error for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 187.) The failure to make a timely objection at trial and to renew it in a post-trial motion operates as a waiver of the right to raise the issue as a ground for reversal on review. *People v. Johnson* (1987), 119 Ill. 2d 119, 138-39; *People v. Hall* (1986), 114 Ill. 2d 376, 418.

Supreme Court Rule 615(a), however, provides a limited exception to this. (107 Ill. 2d R. 615(a).) That rule provides that plain errors affecting substantial rights may be noticed on appeal, though not objected to at trial and in a post-trial motion. The plain error rule permits a reviewing court to consider a trial error not properly preserved for review in two circumstances. First, where the evidence in a criminal case is closely balanced, a reviewing court may consider a claimed error not properly preserved so as to preclude argument of the possibility that an innocent man may have been wrongly convicted. (*People v. Carlson* (1980), 79 Ill. 2d 564, 576-77.) A court will examine the record only to see if the evidence is "closely balanced." If it is not, there is no need to consider an error which was not properly preserved for review. *People v. Green* (1979), 74 Ill. 2d 444, 454 (Ryan, J., specially concurring).

The evidence here cannot reasonably be regarded as closely balanced. As stated, the victim of the robbery testified that under favorable circumstances for identification he was 90% certain that the defendant was the man who robbed him. In addition to this direct identification evidence, there was compelling circumstantial evidence to support the defendant's conviction (*e.g.*, Herrett's presence at the Shigemura residence one hour after the robbery occurred, with a man matching the description of the white robber, the stolen jewelry and the car used in the robbery). There was no evidence to contradict the conclusion that Herrett was guilty. A gratuitous speculation that another black man committed the offense did not make the evidence of the defendant's guilt less convincing. Thus, the first prong of the plain error rule is not satisfied in this case.

The plain error rule also may be invoked where the error is so fundamental and of such magnitude that the accused was denied a fair trial. The rule is invoked where it is necessary to preserve the integrity of the judicial process and provide a fair trial. (*People v. Carlson* (1980), 79 Ill. 2d 564, 576-77.) In this case, we will first examine the alleged mistakes to ascertain whether errors occurred and, if so, then determine whether they rose to the level of plain error.

The defendant first argues that the prosecutor's comments erroneously directed the jury's attention to his failure to testify. The State responds that the prosecutor's comments did not direct the jury's attention to the defendant's failure to testify, but simply informed the jury that there was no evidence to substantiate the defense theory.

An accused has a constitutional right not to testify as a witness in his own behalf. (*Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229; *People v. Arman* (1989), 131 Ill. 2d 115.) The prosecu-

tion may not directly or indirectly comment on the defendant's failure to take the stand in his own defense. (*People v. Lyles* (1985), 106 Ill. 2d 373, 390; *People v. Burton* (1969), 44 Ill. 2d 53, 56-57; *People v. Wollenberg* (1967), 37 Ill. 2d 480, 488; see also Ill. Rev. Stat. 1983, ch. 38, par. 155–1 (prohibiting comment on criminal defendant's failure to testify).) The prosecution may, however, describe the State's evidence as uncontradicted, even if the defendant is the only one who could have contradicted it, if the comments are not intended or calculated to direct the jury's attention to the defendant's failure to testify. (*People v. Lyles* (1985), 106 Ill. 2d 373; *People v. Hopkins* (1972), 52 Ill. 2d 1, 6.) A reviewing court must examine the prosecutor's remarks in the context of the entire proceeding, to determine whether the challenged remarks were improper comments on the accused's failure to testify. *People v. Arman* (1989), 131 Ill. 2d 115.

As stated, several of the prosecutor's comments referred to omissions in testimony that could have been supplied by witnesses other than the defendant, such as the Shigemuras. These comments did not necessarily direct the jury's attention to the defendant's failure to testify and, hence, were not improper. *United States v. Armedo-Sarmiento* (2d Cir. 1976), 545 F.2d 785, 793 (prosecutor may stress the lack of contradiction of government witnesses where possibly contradictory testimony was available from witnesses other than the defendant); see also *United States ex rel. Adkins v. Greer* (7th Cir. 1986), 791 F.2d 590, 598 (prosecutor's comments that the defense offered no explanation or witness testimony as to why the defendant was in possession of the murder victim's property were not improper since someone other than the defendant might have offered such explanation).

From our review of the record, however, we conclude that the prosecutor's statements, which referred to the defendant's failure to explain his presence at the Shigemura residence, constituted an impermissible comment on the defendant's failure to testify. The comments here are similar to those held improper in *People v. Arman* (1989), 131 Ill. 2d 115. There, the defendant was convicted of narcotics racketeering. The evidence introduced at trial included a series of police surveillance photographs that showed the defendant with an undercover police officer in the parking lot of a restaurant allegedly engaged in a drug transaction. (*Arman*, 131 Ill. 2d at 122.) As in this case, the defendant did not introduce any evidence in his own behalf. Instead, his attorney argued in closing argument that the photographs showing the defendant at the restaurant did not establish that there was a completed narcotics transaction. The prosecutor, in rebuttal, referred three times to the failure of the defense to offer any explanation for the defendant's presence at the restaurant where the surveillance crew photographed his meeting with an undercover agent. Defense counsel objected to all three comments; the trial judge overruled the first objection but sustained the second and third objections. *Arman*, 131 Ill. 2d at 122.

As in this case, the State argued that the prosecutor's comments simply referred to the uncontradicted evidence of the defendant's guilt. (*Arman*, 131 Ill. 2d at 125.) This court rejected this argument, holding that, although a prosecutor may state that the evidence of a defendant's guilt is uncontradicted, the prosecutor in *Arman* exceeded the bounds of such fair comment when he referred to the failure of the defendant to provide any explanation for the defendant's presence at the restaurant. Although the court concluded that constitutional error occurred when the prosecutor commented on the defendant's failure to testify, it held that the error was

harmless beyond a reasonable doubt, because the evidence of the defendant's guilt was overwhelming. *Arman*, 131 Ill. 2d at 127-28.

In view of this court's decision in *Arman*, we conclude that the prosecutor in this case exceeded the bounds of fair comment when he referred to the failure of the defendant to explain his presence at the Shigemura residence.

The defendant also argues that the prosecutor's closing argument improperly directed the jury's attention to the defendant's post-arrest silence in violation of *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240. In *Doyle*, the Supreme Court observed that every post-arrest silence is inherently ambiguous, because a person taken into custody must be advised of his right to remain silent. Silence in the wake of *Miranda* warnings may be nothing more than the arrestee's exercise of his right not to speak. The court concluded that it would be fundamentally unfair and a violation of due process to allow the prosecution to use post-arrest silence against a criminal defendant at trial. *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240.

The prosecutor's remarks at issue here fall within the ambit of *Doyle*. In closing argument, the prosecutor said: "Did Mr. Herrett tell the police, well, there was another black man here and he left ten minutes ago? No, he didn't tell them that. Is that what you would do if you were innocent of an armed robbery and thought you were going to be charged? *** He didn't tell them that." The prosecutor's remarks invited the jury to view the defendant's post-arrest silence as a tacit admission of guilt. The remarks constituted error.

The State, citing *Anderson v. Charles* (1980), 447 U.S. 404, 65 L. Ed. 2d 222, 100 S. Ct. 2180, argues that *Doyle* does not apply here, because Herrett did not remain silent upon arrest. Instead, he stated that he knew

Cahokia was in Illinois but had never been there, and that he would not be frightened into making any further statements. In *Anderson*, the defendant told the police officer who arrested him that he had stolen a certain automobile from a location two miles from a local bus station. At trial, however, the defendant testified that he had stolen the automobile from a parking lot right next to the bus station. The prosecution then cross-examined the defendant regarding the prior inconsistent statement he made at the time of his arrest.

The Supreme Court in *Anderson* held that *Doyle* does not bar the State from cross-examining a defendant who testifies at trial regarding prior inconsistent statements made at the time of his arrest. Here, unlike *Anderson*, the defendant did not testify at trial. Furthermore, the statements the defendant made at the time of his arrest were not inconsistent with the defense theory at trial. Accordingly, we conclude that the prosecutor's remarks were an impermissible comment upon the defendant's post-arrest silence, in violation of *Doyle*.

Although we conclude that the prosecutor improperly commented upon the defendant's post-arrest silence and failure to testify in his own defense at trial, we must also determine whether these errors rise to the level of plain error. As stated, the defendant here, unlike the defendant in *Arman*, did not object to the prosecutor's indirect references to his failure to testify at trial. He also failed to object to the comment on his post-arrest silence.

The second prong or aspect of the plain error rule, that is, the aspect other than the requirement that the evidence be closely balanced, is invoked only in those exceptional circumstances where, despite the absence of objection, application of the rule is necessary to preserve the integrity and reputation of the judicial process. (*People v. Green* (1979), 74 Ill. 2d 444, 454 (Ryan, J., spe-

cially concurring); see, *e.g.*, *People v. Burson* (1957), 11 Ill. 2d 360 (where the record in a murder case raised serious doubts as to the defendant's sanity at the time of trial, the court took notice of the error even though not properly preserved for review, stating that the trial and sentencing of an insane defendant is a violation of due process).) A reviewing court will grant relief under this prong of the plain error rule only if the error is so fundamental to the integrity of the judicial process and so prejudicial to the defendant that the trial court could not cure the error by sustaining an objection or instructing the jury to disregard the error. (*People v. Carlson* (1980), 79 Ill. 2d 564, 577.) Otherwise, defense counsel could obtain a reversal of a defendant's conviction, simply by failing to object and by design depriving the trial court of the opportunity to prevent or correct the error. *People v. Carlson* (1980), 79 Ill. 2d 564, 577.

Here, although the errors complained of involve constitutional rights, they are not of such a character that the second prong of the plain error rule must be invoked to preserve the integrity and reputation of the judicial process. This court has held that a comment upon a defendant's post-arrest silence, while improper, is not an error of such magnitude as to clearly deprive the defendant of a fair trial. (*People v. Stewart* (1984), 104 Ill. 2d 463, 488; *People v. Lucas* (1981), 88 Ill. 2d 245, 252.) Similarly, this court has held that an improper reference to the accused's failure to testify in his own behalf at trial is not an error which is so substantial that it deprives the accused of a fair and impartial trial. (*People v. Whitehead* (1987), 116 Ill. 2d 425, 448.) It is to be remembered that the plain error rule is to be a limited exception to the doctrine of waiver (*People v. Carlson* (1980), 79 Ill. 2d 564, 578) and that, as it was put in *People v. Precup* (1978), 73 Ill. 2d 7, 16, "Rule 615(a) does not operate in the nature of a general savings clause

preserving for review all errors affecting substantial rights whether or not they have been brought to the attention of the trial court." The rule therefore may not be invoked in this case. Accordingly, we hold that the defendant is barred by his procedural default from raising the errors as grounds for reversal.

For the reasons given, the judgment of the appellate court, affirming the conviction of Michael Herrett, is affirmed.

*Judgment affirmed.*

JUSTICE CALVO took no part in the consideration or decision of this case.

JUSTICE CLARK, dissenting:

The majority correctly concludes "that the prosecutor improperly commented upon the defendant's *** failure to testify in his own defense at trial." (137 Ill. 2d at 214.) However, the majority refuses to consider whether the prosecutor's comments mandate reversal in this case because the majority concludes that such comments do not constitute plain error. (137 Ill. 2d at 215-16.) Because my review of the record indicates that the plain error rule is applicable in this case, I would review the defendant's claim concerning the prosecutor's improper comments and reverse the defendant's conviction.

The plain error rule may be invoked in criminal cases to review an error which has not been properly preserved for review (1) where the evidence is closely balanced, or (2) where the error is of such magnitude that the defendant was denied a fair trial. (*People v. Carlson* (1980), 79 Ill. 2d 564, 576-77.) As I will explain, both prongs of the test have been met here.

A primary purpose of the plain error rule is to guard against the "possibility that an innocent person may have been convicted due to some error which is obvious

from the record, but not properly preserved." (*Carlson,* 79 Ill. 2d at 576.) In criminal cases where the evidence of guilt is overwhelming, it is unlikely that the defendant's conviction could be attributable to a relatively "minor" error that occurred at trial. On the other hand, where the evidence in support of guilt is less conclusive, *i.e.*, where the evidence is "closely balanced," there is a much greater probability that even a so-called "minor" error at trial was a causal factor in the defendant's conviction. Thus, in cases where the evidence of guilt is closely balanced, this court will invoke the plain error doctrine to determine whether an unobjected-to error at trial constituted reversible error. *Carlson,* 79 Ill. 2d at 576.

I fail to understand how the majority can conclude that "[t]he evidence here cannot reasonably be regarded as closely balanced" (137 Ill. 2d at 210). According to the majority, the store clerk's uncertain identification testimony, the fact that the defendant was with a man who matched the description of the white robber one hour after the robbery occurred, and the fact that the defendant did not introduce any evidence to contradict the State's claim that the defendant was guilty all point to the "convincing" conclusion that the defendant is guilty. (137 Ill. 2d at 210.) I am not convinced.

As the majority recognizes, the store clerk's testimony is far from conclusive. On cross-examination, the clerk admitted that he only saw the black robber's face for one or two seconds and that the light in the pawnshop at the time he saw the black robber was "kind of dim." The clerk also testified that, two or three days after the robbery occurred, he was unable to positively identify the black robber from a series of photographs he was shown. Instead, all that the clerk could say at that time was that the black robber was either the defendant or another man shown in the photographs. Even at trial,

the clerk was not certain of his identification as he testified that he was only "ninety percent sure" that the defendant was one of the men who robbed him.

It is true that "the fact that a witness does not positively identify a defendant at trial *** does not render his testimony invalid" (137 Ill. 2d at 204), and that such uncertain testimony can establish guilt beyond a reasonable doubt (see *People v. Slim* (1989), 127 Ill. 2d 302, 309). However, as the majority recognizes, the fact that an identification is uncertain does have an effect upon the weight that should be accorded the identification. (137 Ill. 2d at 204; see also *People v. Strother* (1972), 53 Ill. 2d 95, 100-01; *People v. Jackson* (1987), 161 Ill. App. 3d 573, 584.) As I have described, the clerk in this case was never certain in his identification of the defendant. All that he could say with any certainty is that one of the robbers in this case was a black man. Such uncertain identification testimony, I believe, should not be accorded the weight attributed to it by the majority in determining whether the evidence in this case is closely balanced.

The majority opinion also finds it significant that the defendant was found one hour after the robbery at a house with a man who fit the description of the white robber. (137 Ill. 2d at 210.) Also found at the house were the stolen jewelry and the car that was used in the robbery.

The circumstantial evidence in this case, even when viewed in conjunction with the clerk's uncertain identification, is far from conclusive. I note that the stolen money and the gun used in the robbery were not found at the house where the defendant was found. Furthermore, there is no evidence that the defendant possessed the stolen property or even knew that it was in the house.

The majority also bases its conclusion that the evidence of the defendant's guilt was convincing on the fact

that "[t]here was no evidence to contradict the conclusion that [the defendant] was guilty." (137 Ill. 2d at 210.) This statement, however, is not entirely correct.

It is true that the defendant did not introduce any evidence that directly contradicted the State's case. However, defense counsel, through cross-examination, established that the clerk's identification of the defendant could have been erroneous. Defense counsel also established that the stolen cash and the gun used in the robbery were not found. Both lines of cross-examination support the conclusion that a black man other than the defendant committed the crime, and therefore "contradict the conclusion that [the defendant] was guilty."

The evidence in this case, in sum, only establishes the following with any certainty: (1) a black man and a white man committed the robbery; (2) one hour later, the defendant, a black man, was present at a house with the white man who committed the robbery; (3) some of the stolen property and the car used in the robbery were also at the house; and (4) the victim of the robbery thought, but was not sure, that the defendant could have been the black robber. While I agree with the majority that the evidence here, when viewed in the light most favorable to the prosecution, is sufficient to support the jury's verdict, I think that it is certainly a close case. I therefore would address the defendant's claim regarding the prosecutor's comments under the first prong of the plain error doctrine.

Even if the evidence in this case was not closely balanced, this court's prior decisions make clear that the prosecutor's comments in this case concerning the defendant's failure to testify constitute plain error under the second prong of the plain error test. Under this second prong, this court will review trial errors, despite the absence of objection, that are "of such magnitude that

the commission thereof denies the accused a fair and impartial trial." *Carlson*, 79 Ill. 2d at 576-77.

The majority concludes that the second prong of the plain error rule is inapplicable in this case because, according to the majority, "this court [in *People v. Whitehead* (1987), 116 Ill. 2d 425, 448] has held that an improper reference to the accused's failure to testify in his own behalf at trial is not an error which is so substantial that it deprives the accused of a fair and impartial trial." (137 Ill. 2d at 215.) Unfortunately, the majority's reading of *Whitehead* is incorrect. What this court actually held in that case was "we do not believe that the prosecutor's remarks in the context in which they were made would have been construed by the jurors as comments on the defendant's failure to testify." (*Whitehead*, 116 Ill. 2d at 448.) Thus, the holding in *Whitehead* was that the prosecutor's comments did not constitute error, and so this court did not consider whether the error created by such comments, had the comments been improper, would have been of sufficient magnitude to constitute plain error.

In *People v. Burton* (1969), 44 Ill. 2d 53, 56, and *People v. Wollenberg* (1967), 37 Ill. 2d 480, 488, however, this court held that prosecutorial comments which call attention to a defendant's failure to testify *do* constitute plain error. (See also *People v. Morgan* (1960), 20 Ill. 2d 437, 441.) Although not explicitly stated, it is apparent that the holdings in *Burton* and *Wollenberg* were based on the second prong of the plain error rule, as neither case involved closely balanced evidence. Accordingly, this court's decisions in *Burton* and *Wollenberg* make clear that the prosecutor's comments in this case should be reviewed under the second prong of the plain error rule.

Having concluded that the prosecutor's comments concerning the defendant's failure to testify constitute plain error, I turn now to the question of whether the defendant's conviction should be reversed. Prosecutorial

references to a defendant's failure to testify, such as the comments made in this case, violate the fifth amendment to the United States Constitution. (*Griffin v. California* (1965), 380 U.S. 609, 613-14, 14 L. Ed. 2d 106, 109-10, 85 S. Ct. 1229, 1232-33.) Because the prosecutor's comments in this case constituted Federal constitutional error, the defendant's conviction must be reversed unless the comments were "harmless beyond a reasonable doubt." *Chapman v. California* (1967), 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 828.

As I have explained, the only facts of which we can be relatively certain in this case are that one of the robbers was a black man and that the defendant, a black man, was with the other robber, a white man, one hour after the robbery occurred, at a house where some of the items taken during the robbery were present. The store clerk thinks that the defendant might be the black man who committed the crime.

Defendant's defense is that he did not commit the crime. He claims that the fact that a black man was involved in the robbery, and that he, a black man, happened to be at the house with the white robber one hour after the crime occurred does not prove that he committed the crime. Such a defense is consistent with the store clerk's uncertain identification. It is also quite plausible that the defendant could have been at the house where he was found for any number of reasons other than that he had gone there with the white robber after committing the crime.

The prosecutor's improper comments in this case called attention to the fact that the defendant did not testify. In particular, the comments emphasized the fact that the defendant did not explain why he was at the house. Such comments were improper in that they may have caused the jury to infer that the defendant's failure to testify constituted an admission of guilt. See *Griffin*

*v. California* (1965), 380 U.S. 609, 613-14, 14 L. Ed. 2d 106, 109-10, 85 S. Ct. 1229, 1232-33.

In this case, the only evidence directly tying the defendant to the crime was the store clerk's suspect identification. Thus, the State's case depends largely upon the assumption that the reason the defendant, a black man, was at the house one hour after the crime was committed was that he had been involved in the crime. In this context, I do not believe that the prosecutor's comments, which implied that the defendant's failure to provide an explanation for his being at the house constituted an admission that he was there because he was involved in the robbery, were harmless beyond a reasonable doubt. Accordingly, I would reverse the defendant's conviction and remand to the trial court for a new trial.