THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
SHAWN DANTZLER, Defendant-Appellant.

Third District   No. 3—90—0507

Opinion filed May 17, 1991.

Mark D. Fisher, State Appellate Defender's Office, of Ottawa, for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet (Terry A. Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GORMAN delivered the opinion of the court:

The defendant, Shawn Dantzler, was charged with unlawful possession with intent to deliver more than 5 grams but less than 15 grams of a substance containing cocaine in violation of section 401(b)(2) of the Illinois Controlled Substance Act (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(b)(2)). Following a jury trial, the defendant was convicted and was sentenced to a term of five years' imprisonment. The defendant appeals his conviction. We affirm.

At trial, Joliet police officer Thomas Stein testified that, about 2 p.m. on September 22, 1989, he received a dispatch that gang members were selling drugs at the intersection of 3rd and Union. Officer Stein went to that location and observed five or six people, including defendant, standing on the street corner. As Officer Stein approached the group, everyone except the defendant started walking away. Defendant asked the officer why he was there, and Officer Stein indicated that he was investigating a complaint of gang members selling drugs. Noticing that the two front pockets of the defendant's sweatshirt were bulging, Officer Stein felt the pockets for weapons. As he did so, United States currency began to fall out. The officer then advised defendant that he intended to pat search him, and as he began that procedure, the defendant dropped to his knees holding his head while yelling "He hit me, man, he hit me." With that the other individuals who had begun moving away from Officer Stein as he arrived moved toward him and cursed him. The defendant then pushed Officer Stein and attempted to run from the scene. Officer Stein testified that he grabbed the defendant and, together with Joliet police officer Daniel Stobbe, subdued him. A further search of the defendant's person revealed 20 plastic bags containing a white substance in the defendant's left pants pocket.

On redirect examination, Stein testified that the neighborhood where the incident took place was a predominately black neighborhood which had been the target of a number of "deterrent patrols."

The trial court agreed with defense counsel's objection that this testimony was beyond the scope of the cross-examination, but he allowed the witness' statement to stand. Officer Stein further testified that he felt the need to pat search the defendant for safety reasons due to his previous contacts with the defendant.

Officer Stobbe testified that he also was dispatched to the intersection of 3rd and Union on the afternoon of September 22, 1989, due to a report that drugs were being sold. He then proceeded to give testimony which was substantially similar to Officer Stein's. Officer Stobbe further testified that he gave the 20 bags found on the defendant's person, plus four bags found on the ground underneath the defendant, to an evidence technician at the scene. According to Officer Stobbe, the defendant was in possession of $113.60 at the time of his arrest. Joliet police officer John Panizzo found an additional $109 in the front seat of the defendant's car, which was parked at 3rd and Union.

A crime lab technician testified that he tested all four of the found packages. Each tested positive for cocaine and the total weight of the four packages was 1.7 grams. Of the 20 packages found on the defendant's person, the technician randomly selected and tested 10 of the packages. Each tested positive for cocaine, and the total weight of the 10 packages was 4.8 grams. The technician testified that he only tested 10 of the packages because it was lab policy to test only enough of a substance believed to be a controlled substance to reach the maximum penalty limit possible. Thus, while there were 24 packages, only 14 of those were actually tested and were shown to contain cocaine.

Joliet police officer Phil Valera testified that he formerly purchased drugs from drug dealers when he was a member of the Metropolitan Area Narcotics Squad. According to Officer Valera, a half-gram package of cocaine (the size packages found in defendant's possession) generally sells for $40 to $50. In response to a hypothetical question posed by the prosecutor, Valera opined that a person in possession of 24 of these packages would be a seller, not a mere user. Officer Valera also testified that the area of 3rd and Union is a street dealer area.

Following Officer Valera's testimony, the prosecution rested. The defense rested without putting on any evidence. Following closing arguments, the jury was instructed and retired to deliberate. The jury returned a guilty verdict. Following a sentencing hearing, the trial court sentenced the defendant to five years' imprisonment with credit for six days in pretrial custody. The court also assessed a street value

fine and ordered that the sentence run consecutively to a previously imposed three-year sentence from which defendant was on furlough at the time of the instant offense.

The defendant raises three issues on appeal. The first issue raised is whether he was denied his right to a fair trial due to prejudicial evidence introduced by the prosecution.

The defendant contends that on three occasions during his trial the prosecution introduced evidence which was irrelevant and highly prejudicial. This evidence, defendant maintains, denied him his right to a fair trial.

First, the defendant complains about testimony elicited from Officers Stein and Stobbe concerning the radio dispatch they received directing them to the incident. Both officers testified that they were dispatched to the area because drugs were being sold. Additionally, Officer Stein also revealed that he had been advised during the dispatch that it was gang members who were selling the drugs.

Second, the defendant complains about testimony elicited from Officer Stein as to why he "pat-searched" the defendant. Officer Stein indicated that he pat-searched defendant because he feared for his safety due to his "prior contacts" with the defendant.

Third, the defendant complains about evidence elicited concerning the neighborhood in which he was arrested. Officer Stein characterized the neighborhood as "a predominantly black area" which had "been the target of many extra deterrent patrols." Officer Valera testified that "street dealers" predominantly operate in certain neighborhoods in Joliet and that 3rd and Union is a street dealer area.

However, as defendant concedes, none of this evidence was challenged in his post-trial motions. Thus, the State argues, the issue has been waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) The defendant argues that these errors rise to the level of plain error and requests this court to consider the issue pursuant to Supreme Court Rule 615(a) (107 Ill. 2d R. 615(a)).

In *People v. Herrett* (1990), 137 Ill. 2d 195, 561 N.E.2d 1, our supreme court stated:

> "The plain error rule permits a reviewing court to consider a trial error not properly preserved for review in two circumstances. First, where the evidence in a criminal case is closely balanced, a reviewing court may consider a claimed error not properly preserved so as to preclude argument of the possibility that an innocent man may have been wrongly convicted. [Citation.] A court will examine the record only to see if the evidence is 'closely balanced.' If it is not, there is no need to con-

sider an error which was not properly preserved for review. [Citation.]

\*\*\*

The plain error rule also may be invoked where the error is so fundamental and of such magnitude that the accused was denied a fair trial. The rule is invoked where it is necessary to preserve the integrity of the judicial process and provide a fair trial." 137 Ill. 2d at 209-10, 561 N.E.2d at 7-8.

■ The defendant has failed to convince this court that we should consider the alleged errors under the first circumstance of the plain-error rule. We do not find this to be a case where the evidence is "closely balanced." As we have made that determination, we need not consider the alleged errors.

The defendant has also failed to convince this court that we should consider the alleged errors under the second circumstance of the plain-error rule. In examining these alleged errors, it is apparent that they are not the fundamental types of errors that deny a defendant a fair trial. Accordingly, the integrity of the judicial process is not called into question, and we decline to address the alleged errors.

The defendant next contends that he was denied his right to a fair trial because testimony elicited from Officer Valera invaded the province of the jury. The defendant points to the following testimony in making this complaint:

"Q. [Prosecutor]: Now, Officer Valera, hypothetically, if a person is in possession of 24 little packages, just as we have here, of cocaine, do you have an opinion as to whether he would be a user of cocaine?

DEFENSE COUNSEL: Objection, your Honor.

THE COURT: May ask.

Q. [Prosecutor]: Or a seller of cocaine?

A. [Officer Valera]: My opinion is he would be a seller."

During the State's rebuttal closing argument, the prosecutor made the following statement:

"He [Officer Valera] has seen drug dealers working before, and he testified that his opinion, when you have 24 little packets of this nature on one individual, in an area known for drugs, that the person had an intent to deliver, and based upon that, based upon your common sense, I'm going to ask that you find the defendant guilty of an unlawful possession of a controlled substance in this case, cocaine, with the intent to deliver."

Once again, the defendant did not object to Officer Valera's testimony or the prosecutor's comments in his post-trial motion. The issue is thus waived unless the plain-error rule is applied.

■ While we do not condone the actions of the prosecutor in eliciting this testimony or her comments during closing argument, they do not rise to the level of plain error. As we indicated earlier, this was not a close case. The defendant was arrested while in possession of 24 one-half-gram bags containing a white powder. Of 14 bags tested, 14 tested positive for cocaine. Officer Valera, qualified as an expert in narcotics packaging and distribution, testified that the small packages of cocaine were the type used by drug dealers, and that he had never observed a cocaine *user* purchase or possess more than four one-quarter-gram bags of cocaine from a street dealer.

Additionally, this was not an error so fundamental that it calls into question the integrity of the judicial process. The court advised the jury that the opening and closing arguments were not evidence and that they should consider only the evidence presented. This cured any ambiguity over intent raised by the prosecutor's actions.

■ The last issue defendant raises involves what he claims is an exaggeration of the quantity of cocaine found in his possession. Defendant had 20 one-half-gram packages containing a white powdery substance on his person when arrested. Four more such packages were found underneath the defendant on the sidewalk after he was subdued. However, as noted before, only 14 of these packages were tested and shown to contain cocaine. The defendant contends that the prosecutor misled the jury by referring to 24 packages of cocaine. We note, however, that the record reveals that during both the initial and rebuttal closing arguments the prosecutors reminded the jury that not all of the packets taken from the defendant had been tested.

The defendant did not object to these statements, nor did he raise the issue in a post-trial petition. We conclude that this does not rise to the level of plain error. For the reasons listed above, the decision of the circuit court of Will County is affirmed.

Affirmed.

STOUDER, P.J., and SLATER, J., concur.